The STATE ex rel. MATLACK, INC., Appellant,

v.

INDUSTRIAL COMMISSION OF OHIO et al., Appellees.

[Cite as *State ex rel. Matlack, Inc. v. Indus. Comm.* (1991), 73 Ohio App.3d 648.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–1316.

Decided June 25, 1991.

**650**

*Vorys, Sater, Seymour & Pease, Joseph A. Brunetto* and *Bradley K. Sinnott,* for appellant.

*Lee Fisher,* Attorney General, and *Gerald Waterman,* for appellee Industrial Commission of Ohio.

*Nein & Olix, James R. Nein* and *Thomas J. Olix,* for appellee Steven L. Hemry.

PETREE, Judge.

This is an appeal from a judgment of the Franklin County Court of Common Pleas which denied a writ of mandamus to relator, Matlack, Inc. Relator assigns two errors for review:

"I. The trial court erred when it concluded that an Industrial Commission member may lawfully cast a decisive vote on a matter that he has not heard.

"II. The trial court erred when it concluded that there was some evidence before the Industrial Commission that claimant was temporarily totally disabled from September 2, 1982 through March 25, 1986."

Relator filed this original action in the common pleas court on May 30, 1989, seeking a writ of mandamus to order the Industrial Commission of Ohio to vacate its February 1, 1989 order granting claimant, Steven L. Hemry, temporary total disability compensation, and to further enter an order denying said compensation. The complaint alleges the following facts.

Claimant filed an application on September 24, 1982, requesting recognition of an occupational disease he contracted in the course of and arising out of his employment with relator. Claimant's application was allowed for "chronic industrial chemical bronchitis with associated compensatory emphysema."

On April 3, 1986, claimant filed a motion for an award of temporary total disability compensation pursuant to R.C. 4123.56. A district hearing officer heard this motion on December 24, 1987 and issued an order denying such compensation on the ground that claimant's condition was permanent. This order was based upon the initial C–84 of claimant's attending physician, Dr. Daneshvari, and upon his September 17, 1982 report. The hearing officer also noted the reports of Drs. Grodner, Kress, and Chinn. The Columbus Regional Board of Review affirmed this order in all respects.

Claimant appealed these orders to the entire Industrial Commission and the matter was heard on January 12, 1989. Commission members McAllister, McCarthy, and Trout were present at the hearing. Thereafter, on February 1, 1989, the commission issued an order granting claimant's appeal and vacating the administrative orders in question. The commission found claimant temporarily and totally disabled from September 2, 1982 to March 25, 1986 and therefore ordered relator to pay the corresponding compensation for this period. The commission further found that Dr. Daneshvari's March 25, 1986 report, which said that claimant should not be evaluated for rehabilitation and in which the doctor indicated that he doubted that claimant will ever return to work, constituted the first medical evidence of claimant's reaching maximum medical improvement. The commission also found that Dr. Daneshvari's reports between September 16, 1982 and March 25, 1986 did not indicate maximum medical improvement, but, rather, " * * * anticipated possible return to work and/or rehabilitation."

This order was made on the motion of Commissioner Smith and was seconded by Commissioner McCarthy. Commissioners Smith, McCarthy, and Trout voted in the affirmative while Commissioner McAllister voted against

such action. Commissioner Smith did not attend the January 12, 1989 hearing nor did he have available to him the verbatim transcript of the hearing, which was filed after this order was voted on and issued.

The cause was tried to the common pleas court on the stipulated exhibits attached to the parties' briefs, which contained pertinent portions of the Industrial Commission claim file. The trial court found against relator on both issues presented. First, the court found that there was no procedural due process violation by virtue of Commissioner Smith's participation in the case because, even though he was not present at the hearing on the claim, at the time of his vote he had before him a case summary to review, which was prepared by a commission attorney who had attended the hearing. Second, the court found that there was some evidence supporting the commission's order finding claimant's condition temporary for the time period in question.

The first assignment of error presents the issue of whether procedural due process was violated by the nonattending commissioner's participation in the decision on claimant's workers' compensation claim.

Relator maintains that procedural due process was violated because Commissioner Smith cast the decisive vote on this disputed claim without ever having been in attendance at the oral hearing on the claim. Relator concedes that, under R.C. 4121.06(A), nonattending commissioners may vote on disputed issues without personally attending the hearing on the issues; however, relator contends that due process mandates that such a voting procedure be employed only if nonattending commissioners review either a verbatim transcript or some other substantial and fair recordation of the oral hearing, in addition to all of the other pertinent evidence. Relator emphasizes that there is nothing in the record herein to establish that this occurred. First, there was no transcript in the record at the time of Commissioner Smith's vote. Second, the so-called summary of the claim prepared for the commissioners by a commission attorney did not purport to be a summary of the evidence presented, but rather was merely a claim file summary.

Relator relies on *State ex rel. Ormet Corp. v. Indus. Comm.* (1990), 54 Ohio St.3d 102, 561 N.E.2d 920. In *Ormet,* the Supreme Court of Ohio affirmed this court's issuance of a writ of mandamus in a case in which a nonattending commissioner cast a tie-breaking vote to award compensation. Emphasizing the flexibility anticipated in the administrative process, the Supreme Court rejected the employer's argument that only personal observation and attendance at an oral hearing on an industrial claim could suffice under the Due Process Clause. Instead, the court recognized the core function of the due process guarantee in this context—that the decision-maker consider and

appraise all the evidence so that the decision-maker truly can make an informed judgment. *Id.* at 103–104, 561 N.E.2d at 921–923.

While the court reaffirmed the principle that there is a presumption of regularity which attaches to commission proceedings, the court found that the presumption was destroyed on the evidence presented. Specifically, the court found that, although the nonattending commissioner in *Ormet* was obligated to consider the evidence in "some meaningful manner," *id.* at 107, 561 N.E.2d at 925, he had not considered the evidence in any manner. The court noted that the undisputed facts were: (1) the nonattending commissioner did not attend the oral hearing on the claim; (2) there was no transcript of the hearing; (3) there was no report or summary of the hearing prepared; and (4) no other hearing or meeting occurred between the nonattending commissioner and the attending commissioners. *Id.* In fact, the nonattending commissioner admitted that he did not consider the evidence presented at the hearing. *Id.*

Furthermore, the court rejected the Industrial Commission's argument that, in this situation, a review of the claim file satisfied due process. The court emphasized that a violation of due process cannot be excused by mere administrative inconvenience. The court also rejected the commission's argument that no meaningful evidence was presented at the oral hearing because, as the court noted, there was no transcript in the record to establish this. *Id.*

To be sure, *Ormet* teaches that under some circumstances the Due Process Clause requires more than merely reviewing the claim file. Though the claim file is truly the single most important aspect of the record before the commission—and generally is the determinative evidence—it must be remembered that evidence may be submitted at commission hearings on disputed issues. On this score, due process requires more than simply going through the motions.

 Yet, in this case, we are not persuaded that due process was violated in a manner prejudicial to relator's rights. For, unlike the situation in *Ormet,* there is no stipulation here that the nonattending commissioner did not consider all the evidence. More importantly, in this case there is a verbatim transcript of the proceedings before the commission.[1]

---

1. The parties have debated whether a case summary prepared by a commission attorney can satisfy due process under the *Ormet* case. The commission has argued that even if it does not, a transcript does and the nonattending commissioner had one on reconsideration. This, the commission contends, would cure any due process problem. Cf. *State ex rel. BF Goodrich Co. v. Indus. Comm.* (1991), 73 Ohio App.3d 271, 596 N.E.2d 1118. However, we need not address these arguments.

The transcript of the proceedings before the commission contained in the record clearly reveals that no evidence was presented at the hearing. Rather, the hearing consisted only of oral argument conducted by the attorneys for the parties. While claimant was present at the hearing he was not sworn, did not testify, and did not participate in the hearing in any other manner.

Does the Due Process Clause mandate that deciding officers in an administrative hearing actually hear the oral argument presented? The answer is "no." 3 Davis, Administrative Law Treatise (2 Ed.1980), Section 17:2, citing *McGraw Elec. Co. v. United States* (E.D.Mo.1954), 120 F.Supp. 354, affirmed without opinion (1954), 348 U.S. 804, 75 S.Ct. 45, 99 L.Ed. 635.

In *McGraw Electric*, a three-judge panel upheld an order of the Interstate Commerce Commission concerning shipping rates where only one commissioner of the three-member commission heard the scheduled oral argument. In fact, this attending commissioner actually dissented from the order of the majority. One of the nonattending commissioners in the majority was unavoidably absent from the hearing, but reviewed a transcript of the argument before voting. The other nonattending commissioner was appointed to take the place of an attending commissioner who had died. As the *McGraw Electric* court noted, "[d]ue process of law under the Fifth Amendment does not necessarily require that oral argument be granted. * * *" *Id.* at 358, citing *Fed. Communications Comm. v. WJR, The Goodwill Station* (1949), 337 U.S. 265, 275, 69 S.Ct. 1097, 1103, 93 L.Ed. 1353, 1360.

It follows that even though Commissioner Smith should not have voted on the claim without considering the transcript, it is of no consequence that he did not consider it because the transcript contains only arguments of counsel as opposed to evidence. Hence, any error would be harmless and nonprejudicial to relator's rights.

Accordingly, relator's first assignment of error is not well taken.

The second assignment of error presents the issue of whether there was some evidence in the record to support the commission's order finding that claimant's lung condition was temporary until March 25, 1986.

Relator argues that from the inception, claimant has had a permanent, deteriorating, and disabling lung disease with no prognosis for improvement. Relator emphasizes that claimant's own attending physician has stated from the outset that claimant's condition is "irreversible." Consequently, relator argues that there is no evidence supporting the order of the commission.

In *State ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586, the Supreme Court of Ohio held that an employee may receive temporary total disability compensation until: (1) the employee

has returned to work; (2) the employee's treating physician states that the employee is capable of returning to the employee's former position of employment; and (3) the temporary disability has become permanent. Accord *State ex rel. Eaton Corp. v. Lancaster* (1988), 40 Ohio St.3d 404, 534 N.E.2d 46.

The concept of permanency relates to the perceived longevity of the condition. *Vulcan Materials Co. v. Indus. Comm.* (1986), 25 Ohio St.3d 31, 25 OBR 26, 494 N.E.2d 1125. A permanent condition is one which will, with reasonable probability, continue for an indefinite period of time without any indication of recovery therefrom. *Id.* at 33, 25 OBR at 27, 494 N.E.2d at 1127, quoting *Logsdon v. Indus. Comm.* (1944), 143 Ohio St. 508, 28 O.O. 429, 57 N.E.2d 75.

Essentially, the Supreme Court of Ohio has adopted the ubiquitous maximum medical improvement ("MMI") test for purposes of temporary total disability compensation. As is the case in other states, temporary total benefits will be paid during the healing and treatment period for the condition until the claimant has reached some certain level of stabilization. See 2 Larson, The Law of Workmen's Compensation (1991), Sections 57.12(b) and (c). When this stabilization has been reached and no further improvement is probable, then the condition is permanent and claimant can seek compensation for types of permanent disability, namely, permanent partial disability compensation for partial impairment of earning capacity, and permanent total disability compensation for total impairment of earning capacity.

In the past, the Supreme Court has held that various medical opinions constituted some evidence of MMI. See *State ex rel. Youghiogheny & Ohio Coal Co. v. Kohler* (1990), 55 Ohio St.3d 109, 564 N.E.2d 76 (claimant reached a "maximum level of medical recovery and a level of stabilization and plateau * * * "); *State ex rel. Eldridge v. Indus. Comm.* (1990), 35 Ohio St.3d 189, 519 N.E.2d 650 ("maximum recovery after this period of time"); *State ex rel. Cassity v. Montgomery Cty. Dept. of Sanitation* (1990), 49 Ohio St.3d 47, 550 N.E.2d 474 (claimant has "poor prognosis for any improvement"). Other courts have considered similar statements and found permanency. See *Dept. of Transp. v. Allen* (Fla.App.1980), 384 So.2d 240 (prognosis for improvement "as close to zero as you can get"); *Anderson v. Carlsons Transport* (1978), 178 Mont. 290, 583 P.2d 440 (employee's recovery "as good as it was ever going to get").

Here, relator argues that Dr. Daneshvari's numerous statements that claimant's condition is "irreversible" equate with an opinion that claimant has reached MMI. Relator emphasizes that the doctor has also said that claimant is permanently disabled from his previous job. To assess these arguments, a

full elaboration of the facts and evidence is warranted. Of course, under *State ex rel. Mitchell v. Robbins & Myers, Inc.* (1983), 6 Ohio St.3d 481, 6 OBR 531, 453 N.E.2d 721, this court looks to the evidence cited by the commission to determine if there is some evidence supporting the commission's order.

Claimant was employed with relator, a self-insured employer, as a chemical tank truck driver since 1977. In this capacity, he would load, unload, and transport a variety of chemicals, including methylchloride, formaldehyde, isocyanates, paint resins and glue. His last exposure to such chemicals was on September 2, 1982. Because of respiratory problems, he was unable to perform his job, so he filed a workers' compensation claim for occupational disease. Initially, the claim was denied by the commission because claimant's respiratory problems may have been associated with years of smoking. However, a jury trial was held on this issue and claimant's occupational disease claim was allowed. This court affirmed this finding in *Hemry v. Mayfield* (Dec. 16, 1986), Franklin App. No. 86AP–539, unreported, 1986 WL 14481.

As aforementioned, the commission cited various reports from Dr. Daneshvari to support its conclusion that there was nothing in the record to show MMI prior to March 25, 1986. The commission said that rather than showing permanency, those reports anticipated possible return to work and/or rehabilitation.

The parties have not included in the record the March 25, 1986 report, which is mentioned in the commission's order as follows:

"It is further the finding of the Commission, based upon the report of Dr. Daneshvari, the attending physician, dated 3–25–86, that claimant should not be evaluated for rehabilitation, and he commented, 'I doubt that this man will be able to return to work.' This report constitutes the first medical evidence of claimant having reached maximum medical improvement."

The first report of Dr. Daneshvari in the record is dated September 16, 1982. This letter indicates that claimant has a " * * * severe chemical industrial bronchitis with mild chronic respiratory failure." The doctor indicated that he advised claimant to " * * * stay off work for the coming four (4) weeks with proper medication."

The second report of Dr. Daneshvari is an attending physician's report diagnosing claimant's condition as "[s]evere chronic industrial chemical bronchitis associated with pulmonary emphysema and mild chronic respiratory failure." The doctor indicated that treatment consists of "[b]ronchodilators, antibiotics, oxygen, steroids and rest." The doctor noted that he had been treating claimant for about a week. The doctor further indicated that

claimant could not attend to his former occupation as a chemical tank truck driver. The doctor rated claimant's physical impairment as follows: "Disability on a permanent 80% disability. Can do work which does not require more than a slight physical exertion and mental capability." With regard to claimant's medical history, the doctor stated that claimant indicated that his disease was gradually getting worse in the last three to four years.

On the physician's supplemental report, dated September 27, 1982, the doctor answered in the affirmative when asked whether normal recovery was delayed. The reason stated for this delay was: "Condition irreversible." The doctor further estimated that claimant would be able to return to light work on September 16, 1983 and that claimant should not be evaluated for rehabilitation.

In his September 17, 1982 letter to Dr. Zochowski, Dr. Daneshvari chronicled claimant's history, treatment, and condition. He concluded that claimant was " * * * totally and permanently disabled for the type of job which he has been doing in the past * * * " because of his dizzy spells and blackouts.

On the bottom portion of a pulmonary function study, dated May 17, 1983, the doctor noted that claimant's " * * * response to bronchodilators is rather poor, and there is no improvement, and it is apparent that the obstructive disease in this case is on a permanent basis, and is not reversible. The irreversibility of the obstructive airway after bronchodilators confirms the fact that this man's problem is not bronchial asthma, but is a chronic industrial bronchitis."

Dr. Daneshvari's May 18, 1983 letter to claimant's attorney disputes the findings of Dr. Kress. In this letter, Dr. Daneshvari states that the pulmonary function studies " * * * show that there is no reversibility after the use of bronchodilators, and this means that the obstructive elements in this case are not on an asthmatic basis, but they are on a permanent basis in a chronic bronchitis. * * * " Again, the doctor indicated that claimant was " * * * totally and permanently disabled for the previous type of job which he has been performing. It is extremely dangerous for him to drive chemical tankers anymore, and his frequent black-outs and syncope is due to lack of adequate oxygen and excess carbon dioxide in his blood, and this man should never drive any trucks or chemical tankers in the future. * * * "

Nevertheless, Dr. Daneshvari submitted a C–84, dated December 19, 1984, which indicated an estimated return to work date of August 20, 1985. The doctor also indicated that claimant should be evaluated for rehabilitation "[p]ossibly in the future." Again, however, the doctor stated that claimant's recovery was delayed because his condition was "irreversible."

Finally, on April 1, 1987, Dr. Daneshvari wrote a letter to claimant's attorney which stated: " * * * Mr. Hemry's condition in the past four years has deteriorated and he has not shown satisfactory improvement in his pulmonary problems. This man is totally and permanently disabled to engage in any substantial remunerative type of work."

■ At the outset, we must reject relator's argument that the doctor's use of the term "irreversible" equates with a finding of MMI. To be sure, almost all injuries or diseases are permanent and irreversible in the sense that the body has been changed and will not return to the exact state prior to the onset of the injury or disease. But MMI is based on the concept of recuperation or healing. It is the time period, based on reasonable medical judgment, in which the claimant is brought back to some level of stabilization or plateau. The fact that this level is less than claimant's pre-injury condition does not mean the claimant's condition is permanent from the inception.

A hand can be amputated and this is definitely a permanent injury. Nevertheless, the wound after surgery still requires time to heal and recuperate. Likewise, a lung can suffer permanent airway obstruction. Nevertheless, the disease can still require a period of diagnosis, treatment, and recuperation. As in this case, drugs can be used to try to decrease the obstruction or rule out infection or misdiagnosis. Claimant can be instructed how to function and cope with the disease.

Consequently, we ascribe no special significance to the terms "irreversible" or "permanent" in the abstract. It is very easy to underscore such terminology and claim that a condition is permanent. However, one must look at the evidence cited in context to really gauge the import of these terms. In fact, Dr. Daneshvari used the term irreversible loosely in his letter concerning Dr. Kress by stating there are certain permanent elements of the condition which militate against a diagnosis of an asthmatic condition.

Moreover, courts have held that the permanency is not gauged on the basis of hindsight. " * * * [I]f treatment was given in the hope of improving the condition, the later discovery that no improvement resulted does not bar a finding that the healing period persisted throughout the process of treatment. * * * " Larson, *supra,* at 10–29, citing *Corral v. McCrory Corp.* (Fla.1969), 228 So.2d 900; *Parker v. Eaton* (Fla.App.Dist.1989), 554 So.2d 644.

■ Further, we must note that permanency is not dependent on a finding concerning claimant's ability to return to his former position of employment. It is clear that the commission " * * * need not consider whether a claimant could return to his former position of employment when determining the permanency of a disability * * * " in this context. *State ex rel. Delk v.*

*Indus. Comm.* (1988), 35 Ohio St.3d 187, 189, 519 N.E.2d 638, 639; *Vulcan Materials, supra.*

■ In the present case, it is apparent that the commission ascribed great weight to Dr. Daneshvari's anticipation that claimant could return to work in some capacity. The commission felt that the indications that claimant would be off work for four weeks, that he could return to light duty work, and that there was an estimated return to work date, all demonstrated that the doctor's prognosis was not as grim as his initial reports seemed to indicate. Cf. *State ex rel. Stanforth v. Washington Distributors, Inc.* (1984), 11 Ohio St.3d 236, 11 OBR 549, 465 N.E.2d 77 (commission abused its discretion in terminating temporary total where physician indicated return to work date).

Moreover, the commission felt that the doctor's indication that claimant should possibly be evaluated for rehabilitation in the future also signaled a hope of recovery. It is difficult to assess this because this court cannot be sure what the doctor meant by rehabilitation.

For instance, in *State ex rel. Copeland Corp. v. Indus. Comm.* (1990), 53 Ohio St.3d 238, 559 N.E.2d 1310, the court found that the claimant had not reached MMI where a doctor opined that claimant " * * * 'has likely reached maximal recovery unless he attends a chronic pain and stress center which I feel might be quite helpful in dealing with the multitude of problems of which he still complains. * * * Unless additional improvement is made in a rehabilitation type program, I feel that he has likely reached maximal recovery.' " *Id.* at 239, 559 N.E.2d at 1311. By contrast, in *State ex rel. Miller v. Indus. Comm.* (1988), 36 Ohio St.3d 58, 521 N.E.2d 775, the court found permanency in a case involving permanent sensitivity and allergy to chemicals where a doctor opined that the patient " ' * * * should be evaluated for rehabilitation in a field of work involving no exposure to petroleum products or other toxic chemicals. * * * ' " *Id.* at 59, 521 N.E.2d at 777.

■ Thus, there is a distinction in the case law between physical rehabilitation and occupational-type therapy related to the condition's improvement, and vocational rehabilitation or job training related to claimant's vocational improvement. The former type of rehabilitation can signify continuing possibility of medical improvement while the latter cannot.

In any event, in the present case the commission found these return-to-work and rehabilitation indications important, and discounted Dr. Daneshvari's initial reports, which were made only one week after his initial consultation with claimant and prior to any of the pulmonary studies in the record. While ultimately claimant did not show "satisfactory" improvement, he was continually treated by Dr. Daneshvari in an effort to bring back function and to rule

out any acute, as opposed to chronic, manifestations of the pulmonary bronchitis. In effect, the commission gave the doctor a reasonable time to accomplish this.

We note that relator did not depose the doctor to clarify his opinion. And relator did not submit any expert evidence to establish that the prognosis for such disease is commonly poor.

Accordingly, on the record presented we cannot say that there is no evidence supporting the commission's determination, as relator has argued. Rather, there is some evidence supporting the order.

Relator's second assignment of error is not well taken.

For the foregoing reasons, relator's assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

JOHN C. YOUNG and PEGGY BRYANT, JJ., concur.