10

The State ex rel. Simon, Appellee, v. Industrial Commission of Ohio; Caterpillar Industrial, Inc., Appellant.

[Cite as State ex rel. Simon v. Indus. Comm. (1994), ___ Ohio St.3d ___.]

Workers' compensation — Denial of application for temporary total disability compensation not an abuse of discretion, when.

(No. 93-2207 — Submitted October 24, 1994 — Decided December 14, 1994.)

Appeal from the Court of Appeals for Franklin County, No. 92AP-1626.

Appellee-claimant, Johnnie L. Simon, sustained numerous injuries in the course of and arising from his employment with appellant Caterpillar Industrial, Inc., f.k.a. Towmotor Corporation. At issue is claimant's 1979 injury that was originally allowed for "laceration, burn of left knee." Claimant missed two weeks of work as a result and incurred $143 in medical expenses. In 1982, the Industrial Commission of Ohio assigned an eight percent permanent partial disability to the injury.

In 1986, claimant applied to reactivate his claim. Except for authorizing a change of physicians, the commission denied the application, stating that "[m]edical and factual evidence do not demonstrate the need for further treatment of allowed conditions relating to the incident of April 3, 1979."

In 1988, claimant alleged that his knee injury precipitated "Hypoactive Sexual Desire and Adjustment Disorder with Depressed Mood" and asked that these conditions be added to his allowed claim and compensation be paid accordingly. He submitted a report from then consulting psychologist, Dr. Donald J.

Weinstein, who noted that claimant "complain[s] that the accumulation of [his] injuries left him in pain most of the time." A left-wrist condition, however, was the only industrial injury described as symptomatic. Dr. Weinstein's conclusion reiterated that the alleged psychological conditions "can be attributed to the accumulative [sic] effects of his injuries." Commission psychiatrist Dr. Patricia Martin diagnosed claimant with an "Adjustment Disorder with Mixed Emotional Features" and concurred in Dr. Weinstein's assessment of causal relationship. "[A]djustment disorder with depression mood" was ultimately added to claimant's allowed claim.

In April 1990, claimant submitted the first of several C84 "physician's reports supplemental" from Dr. Weinstein finding temporary total disability from 1982 forward. Caterpillar responded with a report from Dr. Meir Gross, who concluded:

"From the history, Mr. Simon was treated by psychotherapy and antidepressant medication and so far according to him his depression is getting worse not better. I doubt if there is any chance of improving his emotional condition with more therapy. It is my opinion that Mr. Simon has reached a condition of permanency in regard to his emotional state. I feel he has also reached a point of maximal medical improvement in regard to his emotional state."

On September 30, 1991, claimant moved to compel Caterpillar, a self-insured employer, to pay temporary total disability compensation pursuant to the C84s. In support, he offered the report of Dr. William C. House, an associate of Dr. Weinstein's, who noted claimant's recent change in medication from Prozac to

Sinequan and wrote:

"Since that time, Mr. Simon has reported some improvement in his functioning, including less fragmented sleep, increased ability to relax, and perhaps a less depressed mood.

"Regarding the efficacy of therapy, Mr. Simon continues to come for his sessions on a regular basis, reports that he wishes to continue treatment, and indicates to me that he feels increased hope and reports some modest improvement as a result of his therapy, such as an increased activity level and a reduction in withdrawal. As has been previously noted, he also cites his many physical and financial problems as obstacles to further improvement, though I believe that further modest gains are possible. It also remains to be seen whether therapy may become more effective as he continues to benefit from the recent prescription of Sinequan. On this basis I believe that his therapy should continue."

The commission on May 20, 1992 awarded temporary total disability compensation from May 4, 1990 through July 17, 1990 only, based on the report of Dr. Weinstein. Temporary total disability compensation was denied from February 25, 1988 through May 3, 1990 "because claimant was not being treated by any physician for this claim over that period." Temporary total disability compensation after July 17, 1990 was denied as "claimant's disability has become permanent after July 17, 1990 based on the opinion of Drs. Meir & Gross [sic]."

Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, asserting that the commission abused its discretion in denying temporary total disability compensation over the two periods in question. The appellate court did not

address the denial of temporary total disability compensation from February 25, 1988 through May 3, 1990. As to the denial of temporary total disability compensation subsequent to July 17, 1990, the appellate court questioned, among other things, Dr. Gross' report since it "did not address the potential effect of a change of medication on Mr. Simon's depression — a change which could and apparently did affect Mr. Simon's potential for improvement." The appellate court returned the cause to the commission for further consideration of the permanency question with an amended order to follow.

This cause is now before this court on appeal as of right.

_____

Ben Sheerer Co., L.P.A., and Paula Goodwin, for appellee.

David R. Cook, for appellant.

_____

Per Curiam. Two periods of compensation are at issue: February 25, 1988 through May 3, 1990, and July 17, 1990 forward. For the reasons to follow, we affirm the denial of temporary total disability compensation over the first period and affirm the appellate court's disposition of compensation for the second period.

The commission denied temporary total disability compensation from February 25, 1988 through May 3, 1990 due to claimant's lack of medical treatment during that time. Claimant responds that the lack of treatment does not necessarily equate to a lack of disability.

While a lack of treatment may not always equate to a lack of disability, it can, as here, equate to a lack of proof thereof.

The commission did not abuse its discretion in rejecting Dr. Weinstein's 1988 report since he addressed neither claimant's ability to return to his former position of employment nor the temporariness of claimant's condition. That report also noted that the only symptomatic condition at that time was a wrist injury unrelated to the claim at issue. Similarly, given our holding in State ex rel. Case v. Indus. Comm. (1986), 28 Ohio St.3d 383, 28 OBR 442, 504 N.E.2d 30, the commission did not abuse its discretion in declining to retroactively apply Dr. Weinstein's April 1990 supplemental report. Thus lacking any medical evidence in support, the commission properly denied temporary total disability compensation over the first period.

Our analysis turns to the commission's May 20, 1992 declaration of permanency. Our review is complicated by two factors: (1) the susceptibility of the appellate court's reasoning to different interpretations and (2) the speculative nature of Dr. House's report.

"Permanency" or "maximum medical improvement" precludes temporary total disability compensation. R.C. 4123.56(A); State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586; Vulcan Materials Co. v. Indus. Comm. (1986), 25 Ohio St.3d 31, 25 OBR 26, 494 N.E.2d 1125. "Maximum medical improvement" has been defined as "a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical rehabilitative procedures. A claimant may need supportive treatment to maintain this level of function." (Emphasis added.) Ohio Adm.Code 4121-3-32.

Caterpillar argues that Dr. Gross' report was "some evidence" of maximum medical improvement, and that the appellate court erred in returning the cause merely because contrary evidence — Dr. House's report — existed. We do not believe that Caterpillar's position accurately reflects the reasoning underlying the court's decision to return the cause to the commission. Caterpillar's argument is premised on the appellate court's acceptance of Gross' report as "some evidence." Such evidentiary acceptance is debatable, given the appellate court's attempt to discount that report. An equally plausible interpretation of the appellate court's reasoning is that the Gross report was not "some evidence" of permanency — given the subsequent change in claimant's medical treatment — but that a full writ was premature in light of Dr. House's speculative comments on the probability and extent of further improvement. As such, we find that the appellate court acted properly in letting the commission determine whether Dr. House's report supports or negates a finding of maximum medical improvement.

The appellate court judgment is therefore affirmed.

Judgment affirmed.

Moyer, C.J., A.W. Sweeney, Douglas, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.

Wright, J., concurs in part and dissents in part.

Wright, J., concurring in part and dissenting in part.

I concur in the court's reasoning and result with respect to the denial of temporary total disability benefits. I dissent to the court's affirmance of the limited writ of mandamus requiring the Industrial Commission to reconsider its finding of

permanency.

The commission's determination that the relator's allowed condition became permanent after July 17, 1990 is supported by "some evidence"; therefore, that finding is not an abuse of discretion and mandamus should not lie. State ex rel. Burley v. Coil Packing, Inc. (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936.

The record includes two reports relevant to the permanency determination: including one by Dr. Meir Gross (July 31, 1990) and another by Dr. Jay Weinstein (February 25, 1988). The record also includes what the majority describes as "the report of Dr. William C. House." That "report" is actually a letter signed primarily by a "psychology assistant" and secondarily by his "supervisor," Dr. House (November 16, 1990). Regardless of its author, the letter cannot be construed as requiring the commission to reconsider its permanency finding.

The competent evidence in the record provides sufficient support for the commission's finding that the relator's condition became permanent after July 17, 1990. The report by Dr. Weinstein considered two conditions, only one of which was allowed. Dr. Weinstein did not consider whether the relator was temporarily disabled or his likelihood of recovery. The more recent report by Dr. Gross considered the question of temporary disability and expressly concluded that the relator's condition was permanent and that he had reached maximum medical improvement.

The House letter attempted to refute the findings of the Gross report. Dr. House wrote that the relator's medication had been changed after the evaluation by Dr. Gross. Dr. House found

that, as a result, the relator "reported some improvement in his functioning, including less fragmented sleep, increased ability to relax, and perhaps a less depressed mood." Dr. House concluded that: "I believe that further modest gains are possible. It also remains to be seen whether therapy may become more effective as he continues to benefit from the recent prescription of Sinequan. On this basis, I believe that his therapy should continue."

The majority incorrectly finds that the letter requires that the commission reevaluate its permanency determination. The letter is not even relevant to the question of whether the relator's condition had become permanent. As this court has stated numerous times, a "permanent disability" is defined as "a condition which will, '* * * with reasonable probability, continue for an indefinite period of time without any present indication of recovery therefrom.' " (Emphasis added.) Vulcan Materials Co. v. Indus. Comm. (1986), 25 Ohio St.3d 31, 33, 25 OBR 26, 27, 494 N.E.2d 1125, 1127 (quoting Logsdon v. Indus. Comm. [1944], 143 Ohio St. 508, 28 O.O. 429, 57 N.E.2d 75, paragraph two of the syllabus). Consequently, in order to rebut evidence of permanency, there must be evidence of recovery from the disability itself (i.e., the underlying condition), and not just improvement in the symptoms the disability creates.

The letter discusses modest improvement in the symptoms of the relator's depression, and does not consider the potential for improvement in the underlying condition of depression. The description of the relator's improvement due to the change in medication includes less fragmented sleep and an increased

ability to relax. Those two problems were merely symptoms of the relator's depression. Dr. House did not consider whether the change in medication would affect the potential of recovery of the underlying condition by, for example, correcting a chemical imbalance that caused the depression. As such, his opinion is not relevant to the question of whether the condition became permanent, and therefore cannot properly form the basis for requiring the commission to reevaluate its decision.

Even if it can somehow be argued that the letter addresses the potential for improvement in the relator's condition, it still does not negate the evidence in support of the commission's decision.

First, a finding by the commission is not an abuse of discretion if it is contradicted by other evidence, so long as it is supported by some evidence. See State ex rel. Burley v. Coil Packing, Inc., supra. Second, the letter was not competent evidence on the issue of whether the relator's condition was temporary or permanent. Dr. House found that modest gains were possible. In order to be competent evidence of maximum medical improvement or lack thereof, a medical opinion must be expressed to a reasonable degree of medical probability. See Vulcan Materials Co. v. Indus. Comm., supra; State ex rel. Matlack, Inc. v. Indus. Comm. (1991), 73 Ohio App.3d 648, 655, 598 N.E.2d 121, 125. Finally, the fact that the relator experienced very modest improvement, including "perhaps a less depressed mood," is in itself insufficient to negate the finding that the relator had reached the treatment plateau of maximum medical improvement. That concept does not require that the patient's condition remain constant, only that it be expected, within reasonable medical

probability, to continue at essentially the same level for an indefinite period. See State ex rel. Copeland Corp. v. Indus. Comm. (1990), 53 Ohio St.3d 238, 559 N.E.2d 1310. Consequently, the mere change of medication, without a medical opinion as to its probable success, is insufficient to overcome an otherwise proper finding of permanency.

Besides the wholly inadequate House letter, the court of appeals based its decision to grant a limited writ of mandamus on its perception that the commission did not "carefully" consider the evidence presented to it. The court of appeals perceived a lack of diligence because the commission, in an apparent typographical error, referred to Dr. Meir Gross as Drs. Meir and Gross. My word, what a jump!

A court's review of a commission decision is limited to whether the commission's determination is supported by some evidence. State ex rel. Burley v. Coil Packing, Inc., supra. The court of appeals improperly extended its review to include an ambiguous requirement of "carefulness." The typographical error is a patently harmless one, if that. The commission had three documents that addressed the permanency issue, and the order clearly set forth the evidence that the commission relied on in making its determination, which is all the law requires. See State ex rel. Mitchell v. Robbins & Myers, Inc. (1983), 6 Ohio St.3d 481, 6 OBR 531, 453 N.E.2d 721. Because the commission's decision is supported by some evidence, it should not be disturbed because of a mere typographical error. It is for these reasons that I respectfully dissent.