I respectfully dissent. I believe that the evidence relied upon by the commission is speculative and weak. Some evidence must consist of competent evidence. Dr. Flerchinger's 1999 letter states that the 1999 injury is a re-aggravation of the original injury. The commission instead relied on the doctor's failure to check a box marked previous history of similar complaints. Additionally, it does not appear Dr. Flerchinger relied on a non-allowed condition in determining that the 1999 injury was a re-aggravation. Accordingly, I would grant the requested writ of mandamus.
 APPENDIX A IN MANDAMUS
Relator, Patricia E. Blanton, filed this original action in mandamus asking the court to issue a writ compelling respondent Industrial Commission of Ohio to vacate its order denying payment for medical care and to issue an order authorizing payment for medical bills that have been submitted.
Findings of Fact:
1. On May 17, 1998, Patricia E. Blanton ("claimant") was at work when she tripped on a mat and fell.
2. On May 21, 1999, claimant consulted Gregory Flerchinger, D.C., reporting the onset of symptoms when she fell. She explained that she was able to continue her twelve-hour shift that night but that the pain got worse. She described current pain in the lower back, radiating down the right leg to mid-thigh. The pain occurred upon sitting down and getting up, squatting and reaching overhead, and claimant could not do push-ups or sit-ups. She also described a "numbness type sensation" of the right leg. She stated that her gait was affected, and that her bowels were also affected with diarrhea since the accident. Dr. Flerchinger took x-rays and provided therapy on that date.
3. Dr. Flerchinger recommended a treatment plan, but claimant returned only once for therapy, on March 28, 1998.
4. The self-insured employer recognized a workers' compensation claim for lumbar sprain/strain. Claimant missed no work due to the incident, and Dr. Flerchinger's records show no further visits in 1998.
5. On February 1, 1999, claimant visited Dr. Flerchinger reporting that, on January 31, 1999, she was at home and bent over to get her slippers, and as she performed this activity, her low back "gave out." Dr. Flerchinger described the patient's complaint as follows:
 PRIMARY COMPLAINT AND DURATION: LB pn [lower back pain] very taut tender, unable to stand straight, worse on Rt side, unable to raise head up due to pn. Affected stomach. Nauseated. LB area broke out in sweat.
ONSET: SAT. bent over to get slippers. LB gave out.
* * *
 Bowels been constipated since occurred. Urination freq in little bouts. Radiates down both legs post[erior] aspect to knees legs feel weak w/ this Difficulty walking. Can't pull it (back) up straight.
The form asks about "previous history of similar complaint," but Dr. Flerchinger left that space blank. On separate sheets, he listed findings as to reflexes, leg-raising, Fabere's sign, Lasegue's sign, etc.
6. Claimant visited Dr. Flerchinger frequently in February and March 1999. She sought to have these treatments paid in the workers' compensation claim, but the employer responded that, according to her statement to Dr. Flerchinger about how the recent injury occurred, the recent services were necessitated by a new injury, not the May 1998 incident at work. The employer noted that the May 1998 incident had required only two treatments immediately afterward and that claimant had not sought further treatment, which indicated that the problem had resolved. The employer explained that the January 1999 symptoms were caused by a specific activity at home and appeared unrelated. The employer recommended that claimant submit the bills to the group health insurance carrier, but told claimant that she had a right to a hearing and that it would supply the necessary forms.
7. On March 30, 1999, Dr. Flerchinger provided a narrative report. After reiterating the findings in his office notes of May 1998 and February 1999, he concluded as follows:
 DISCUSSION: Due to the fact that this individual has not had other traumas or accidents know to me [sic], I believe, with reasonable medical certainty, that the low back pain which occurred on January 30th [sic] is in fact, a re-aggravation of the original injury which occurred on 5-17-98. Factors predisposing this are: 1) No prior history of low back pain, 2) incompletion of care initiated in May of 1998, 3) As a complicating factor, disc degeneration at L4-L5, L5-S1and osteoarthritis. [Emphasis added.]
8. In August 1999, claimant filed a motion seeking to have Dr. Flerchinger's 1999 bills paid in the workers' compensation claim.
9. In May 2000, a hearing was held before a district hearing officer, who concluded that claimant had not met her burden of proof that the treatments in 1999 were causally related to the lumbar strain in May 1998:
 Fee bills for treatment rendered by Dr. Flerchinger from 02/01/1999 to present are denied as not causally related to the 05/17/1998 industrial injury. When the industrial injury occurred on 05/17/1998, the claimant had only two (2) treatments from Dr. Flerchinger on 05/21/1998 and 05/28/1998. She missed no time from work. Then on 02/01/1999 she sought further treatment from Dr. Flerchinger. The occasion that the claimant sought further treatment was that she reinjured her back while at home, bending over to pick up her slippers. At that point, she sought ongoing continuous treatment, at least for the following dates per the only record on file at this time: 02/01/1999; 02/02/1999; 02/02/1999; 02/04/1999; 02/05/1999; 02/10/1999; 02/12/1999; 03/26/1999. The District Hearing Officer finds the incident at home when the claimant bent over to pick up her slippers to be an intervening and superseding incident to the one in which she tripped on a rug walking to her office. Therefore, the District Hearing Officer denies the payment of treatment from 02/01/1999 to present as not causally related to the 05/17/1998 industrial injury when the claimant tripped on a rug.
 The District Hearing Officer further rejects the claimant's argument that fact that she received a 5% permanent partial impairment award indicated that she had ongoing problems. By definition, percentage of permanent partial impairment is an award for permanent partial impairment.
 Furthermore, the claimant was not present to testify regarding the reason that she sought further treatment on 02/01/1999.
 The claimant has not met her burden of proof that her need for further treatment arose out of the 05/17/1998 industrial injury.
10. In July 2000, a staff hearing officer affirmed, stating agreement with the findings and analysis in the district hearing officer's order. Further review was denied.
Conclusions of Law:
Claimant argues that the commission had a legal duty to order payment of the 1999 bills from Dr. Flerchinger in the workers' compensation claim.
Various judicial decisions have set forth the applicable standards for authorizing treatment for an industrial injury. See, e.g., State ex rel. Nutt v. Cincinnati (1994), 70 Ohio St.3d 594, 597; State ex rel. Miller v. Indus. Comm. (1994), 71 Ohio St.3d 229, 232; See State ex rel. Noland v. Indus. Comm. (Aug. 27, 1987), Franklin App. No. 86AP-594, unreported (1987 Opinions 1973). See, also, Ohio Adm. Code 4121-17-02, 4123-7-02, 4123-6-161, 4123-6-24, 4123-6-25(A). In summary, the claimant must establish that the requested procedure or therapy is reasonably necessary to treat the allowed condition. One of the elements of proof is a causal connection between the industrial injury and the treatment for which payment is sought.
In regard to medical evidence on which the commission may rely, it is settled that a medical report based even in part on nonallowed conditions is not evidence on which the commission may rely. State ex rel. Shields v. Indus. Comm. (1996), 74 Ohio St.3d 264, 268. Where a doctor mentions a nonallowed condition in passing or in the context of a comprehensive medical review, the commission may rely on the report as long as the doctor does not rely on a nonallowed condition in rendering the opinion. State ex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78.
In the present matter, claimant had the burden of proving that the incident in 1999 was an aggravation of the industrial injury she had previously suffered, rather than a new and unrelated injury. The office notes on the dates of treatment do not establish a causal connection. Accordingly, claimant provided a narrative report from Dr. Flerchinger. However, Dr. Flerchinger's report does not constitute some evidence on which the commission may rely.
In his conclusion, Dr. Flerchinger attributes the claimant's February 1999 symptoms in part to "disc degeneration at L4-L5, L5-S1 and osteoarthritis." Thus, in explaining the cause of claimant's current need for treatment, Dr. Flerchinger relied in part on nonallowed conditions. His report, therefore, cannot constitute some evidence on which the commission could rely to establish causation.
To the extent that the terminology used by Dr. Flerchinger ("complicating factor" and "predisposing factor") may not show clear-cut reliance on a nonallowed condition, the magistrate finds that his opinion is nonetheless fatally ambiguous. Here, claimant had a trip-and-fall incident in May 1998 and a bending incident in January 1999, and the issue was whether the treatment in February and March of 1999 was causally related to the lumbar strain in May 1998. In his discussion, Dr. Flerchinger states briefly that claimant had no prior history of low back pain and no prior known trauma, apparently referring to the period prior to May 1998 and apparently indicating that a bending incident cannot cause trauma to the lumbar spine; and then, despite his statement that there was no prior back pain, he states that claimant has two herniated discs and osteoarthritis, without any explanation as to how and when these nonallowed conditions were diagnosed and why he attributes the current symptoms to a 1998 lumbar strain rather than to the herniated lumbosacral discs and arthritis.
Dr. Flerchinger's report was not "some evidence" on which the commission could rely. Therefore, even if there were a flaw in the order denying the motion, the commission had no evidence on which to grant the motion. Dr. Flerchinger's report, even read together with his notes, is insufficient as a matter of law to meet claimant's burden of proof as to causation of her symptoms by the allowed conditions.
The magistrate accordingly recommends that this court deny the requested writ of mandamus.