OPINIONS OF THE SUPREME COURT OF OHIO

**** SUBJECT TO FURTHER EDITING ****

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

The State ex rel. Miller, Appellant amd Cross-Appellee, v. Industrial Commission of Ohio, Appellee and Cross-Appellant.
[Cite as State ex rel. Miller v. Indus. Comm. (1994), Ohio St.3d     .]
Workers' compensation -- Additional allowance of obesity in a workers' compensation claim is not a prerequisite to consideration of payment for a weight-reduction program.
(No. 93-2224 -- Submitted November 14, 1994 -- Decided December 20, 1994.)

Appeal and Cross-Appeal from the Court of Appeals for Franklin County, No. 92AP-955.

In 1985, appellant and cross-appellee, Kathy Jo Miller, claimant herein, injured her back in the course of and arising from her employment as a nurse's aide with Tender Loving Care. Claimant, at that time, weighed two hundred sixty pounds. Appellee and cross-appellant, Industrial Commission of Ohio, allowed her workers' compensation claim and, in the years that followed, claimant's weight increased significantly, allegedly because of the inactivity caused by her injury.

In 1989, claimant moved the commission for authorization to enroll in a supervised weight-loss program. Numerous letters from claimant's attending chiropractor, Dr. Jeffrey L. Hunter, advocated weight loss. The extent to which Dr. Hunter anticipated the weight loss would actually improve claimant's allowed condition as opposed to merely improve her ability to cope with it was not specified.

During this time, the commission had claimant examined to determine her continuing eligibility for temporary total disability compensation. Dr. William Reynolds opined, among other things, that claimant's condition was permanent. He also concurred in Dr. Hunter's recommendation of a weight-loss program.

On March 12, 1991, a commission district hearing officer ruled:

"* * * [T]emporary total compensation is denied after

March 12, 1991.  The District Hearing Officer finds that claimant's condition is now permanent in that maximum improvement has been reached per Dr. Reynolds. * * *

"Should claimant desire authorization for a 'weight loss program,' said request [should] be made on form C-161 by her attending physician, identifying the specific program, treatment modality and medical justification therefore [sic], per Bureau of Workers' Compensation/Industrial Commission rules and procedures."

Claimant's doctor filed the requisite C-161 weight loss authorization form.  A regional board, however, affirmed the district hearing officer's order without comment.

On appeal, staff hearing officers modified the board's order as follows:

"* * * [T]he claimant's request for authorization for a 'weight loss program' is denied for the reason that obesity is not an allowed condition in this claim; therefore, treatment of same cannot be paid."

Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying further temporary total disability compensation and weight-loss treatment authorization.  The court of appeals agreed in part, finding that because Dr. Reynolds recommended weight-loss treatment participation, his report was not "some evidence" that claimant's condition had become permanent.  The court ordered the commission to vacate its order and redetermine claimant's entitlement to temporary total disability compensation after March 12, 1991.  The court upheld the weight-loss treatment denial, ruling that the commission did not abuse its discretion in requiring that "obesity" be recognized as an allowed condition before authorization could be considered.

This cause is now before this court on appeal and cross-appeal as of right.

Stewart Jaffy & Associates Co. L.P.A., Stewart R. Jaffy and Marc J. Jaffy, for appellant and cross-appellee.

Lee Fisher, Attorney General, and Jetta Mencer, Assistant Attorney General, for appellee and cross-appellant.

Per Curiam.  Claimant had a very severe weight problem before her injury.  It has worsened considerably since. Claimant's doctor recommends -- and the commission's physician concurs -- that claimant enter a supervised weight-loss program.  Claimant now asks the commission to authorize and pay for that treatment. Two questions arise: (1)  Is the additional allowance of "obesity" a prerequisite for such authorization? and (2)  Does the weight-loss treatment recommendation preclude a finding of maximum medical improvement ("MMI") and thus the denial of temporary total disability compensation?  For the reasons to follow, we affirm the appellate judgment only in part.

Former R.C. 4123.651(A) read:

"Any employee who is injured or disabled in the course of his employment shall have free choice to select such licensed physician as he may desire to have serve him, as well as medical, surgical, nursing, and hospital services and attention

* * *."  (128 Ohio Laws 765.)

Former R.C. 4121.44 provided:

"The administrator of the bureau of workers' compensation shall adopt rules to ensure that * * * requirements are met with respect to any payments made to health care providers for a claim pursuant to Chapter 4123. of the Revised Code * * *."  (136 Ohio Laws, Part I, 1120-1121.)

Finally, former R.C. 4123.66 directed:

"In addition to the compensation provided for in Chapter 4123 of the Revised Code, the industrial commission shall disburse and pay from the state insurance fund such amounts for medical, nurse, and hospital services and medicine as it deems proper * * * ."  (137 Ohio Laws, Part II, 3954.)

These statutes empowered the commission and bureau to oversee health care expenditures.  State ex rel. Campbell v. Indus. Comm. (1971), 28 Ohio St.2d 154, 57 O.O.2d 397, 277 N.E. 2d 219;  State ex rel. Nutt v. Cincinnati (1994), 70 Ohio St.3d 594, 639 N.E.2d 1196.  Campbell has been interpreted as articulating a three-pronged test for the authorization of medical services: (1) are the medical services "reasonably related to the industrial injury, that is the allowed conditions"?  (2) are the services "reasonably necessary for treatment of the industrial injury"? and (3) is "the cost of such service  * * * medically reasonable"?  See State ex rel. Noland v. Indus. Comm. (Aug. 27, 1987), Franklin App. No. 86AP-594, unreported.

The issue of weight-loss treatment eligibility is complex for several reasons, most of which involve causal relationship.  Perhaps the most difficult element of this issue is the question of general-health improvement versus industrial recovery.  Anyone who is severely overweight would benefit from weight loss for many reasons.  Thus, if sheer improvement were the sole prerequisite, payment for weight-loss treatment would be compelled in every instance -- a result which we find unacceptable.

Other states that have confronted this issue uniformly agree that not only must weight-loss be geared towards improving the allowed industrial conditions, improvement must be curative and not merely palliative.  For example, weight loss treatment was approved by an Oregon appellate court in In re Van Blokland (1987), 87 Ore. App. 694, 743 P.2d 1136, because:

"The conditions intended to be ameliorated by the obesity program are claimant's compensable injuries.  Although it is true that the purpose of the Risk Factor Obesity Program is to help claimant lose weight, the program will also aid her in recovering from the compensable injuries and may avoid the need for surgery. * * *"  Id. at 697-698, 743 P.2d at 1138.

As stated, the treatment cannot be palliative.  It is not enough that weight loss decreases pain associated with the allowed conditions, weight-loss must actually improve those conditions.  As the Rhode Island Supreme Court wrote in Bissonnette v. Federal Dairy Co., Inc. (R.I. 1984) 472 A.2d 1223, 1226-1227:

"The record indicates that the loss of weight would relieve the pain and discomfort associated with employee's injuries as well as his other medical ailments -- elevated

blood pressure, reduced lung capacity and hormonal problems. As we have long held, however, pain is not compensable under our compensation statute * * * Rather, employee must prove that the disputed treatment would relieve, rehabilitate, or cure his disability. This he has not done. As beneficial as the loss of weight may be to employee's general health, there is no evidence that he would ever be able to return to his former work, even assuming the loss of weight.

"* * * [C]ompensating employee for the expenses of the weight-loss clinic would be tantamount to providing him with general health insurance. Such a result was never intended under the Workers Compensation Act."

Within this framework, the emerging consensus is that in certain situations, weight-loss programs can and should be authorized. See, e.g., Braewood Convalescent Hosp. v. Workers' Comp. Appeal. Bd. (1983), 34 Cal. 3d 159, 193 Cal. Rptr. 157, 666 P.2d 14; Hopp v. Mill (Minn. 1993), 499 N.W.2d 812; Bissonette, supra; Van Blokland, supra. At a minimum, when statutes similar to Ohio's medical-payment provisions and liberal construction mandates favoring claimants were viewed together, the South Dakota Supreme Court "[could] not say that a medically necessary weight-loss program is never compensable." Krier v. John Morrell & Co. (S.D. 1991), 473 N.W.2d 496, 498.

In this case, the commission does not contest the concept of compensability of weight-loss programs. The commission, however, argues that before payment can even be considered, "obesity" must first be formally recognized as an allowed condition.

We disagree for several reasons.

The commission relies on former R.C. 4123.84(A) which read:

"In all cases of injury or death, claims for compensation or benefits for the specific part or parts of the body injured shall be forever barred unless, within two years after the injury or death * * *." (137 Ohio Laws, Part II, 3960-3961.)

The reference to "specific part or parts of the body" is prominent in R.C. 4123.84. The statute is concerned primarily with compensation for a specific body part hurt, not with compensing for the the nature of injury -- for example, sprain or fracture -- related thereto. Dent v. AT&T Technologies, Inc. (1988), 38 Ohio St.3d 187, 527 N.E.2d 821.

The mechanics of R.C. 4123.84 are irreconcilable with the concept of obesity as an allowed condition. First, obesity is usually a generalized condition. It cannot, therefore, be restricted to a specific body part or parts as R.C. 4123.84 envisions.

Second, an additional allowance must be causally related to the industrial injury either directly or by aggravation. A claimant who is overweight when injured generally cannot maintain the requisite causal relationship for an additional allowance. This would make the pre-existence of the obesity, in and of itself, dispositive.

We find, therefore, that additional allowance of obesity is not a prerequisite to consideration of payment for a weight-reduction program. The requisite causal relationship question, among other relevant concerns, is to be addressed by the three-step test derived from Campbell, supra.

We turn now to the issue of continued temporary total disability compensation.  Temporary total disability benefits cannot be paid to a claimant whose disability has become permanent.  State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586.  "Permanency" refers to a "condition which will '* * * with reasonable probability, continue for an indefinite period of time without any present indication of recovery therefrom.'"  Vulcan Materials Co. v. Indus. Comm. (1986), 25 Ohio St.3d 31, 33, 25 OBR 27, 494 N.E.2d 1125, 1127.  While "permanency" is often used interchangeably with "maximum medical improvement," the former appears in workers' compensation parlance in other contexts as well.  We cannot therefore, assume that every doctor who uses the term "permanency" is denoting "MMI."  State ex rel. Kaska v. Indus. Comm. (1992), 63 Ohio St.3d 743, 591 N.E.2d 235.  As the Franklin County appellate court observed in State ex rel. Matlack v. Indus. Comm. (1991), 73 Ohio App. 3d 648, 658, 598 N.E.2d 121, 127:

"To be sure, almost all injuries or diseases are permanent and irreversible in the sense that the body has changed and will not return to the exact state prior to the onset of the injury or disease.  But MMI is based on the concept of recuperation or healing.  It is the time period, based on reasonable medical judgment, in which the claimant is brought back to some level of stabilization or plateau.  The fact that this level is less than claimant's pre-injury condition does not mean the claimant's condition is permanent from the inception."

We also recognize that the specific use of the term "maximum medical improvement" is not necessary to sustain an MMI finding.  For example, a conclusion that claimant had a "poor prognosis for any improvement" was sufficient to support a termination of temporary total compensation based on permanency.  State ex rel. Cassity v. Montgomery Cty. Dept. of Sanitation (1990), 49 Ohio St.3d 47, 48, 550 N.E.2d 474, 475.  Thus, "one must look at the evidence cited in context to really gauge the import of these terms."  Matlack at 658, 598 N.E.2d at 127.

In this case, Dr. Reynolds expressly characterized claimant's condition as "permanent."  When that term is used in the context of an examination for temporary total disability -- as it was here -- it is not an abuse of discretion for the commission to treat the term as having been used in the Ramirez sense and terminate temporary total disability compensation.  State ex rel Delk v.  Indus. Comm. (1988), 35 Ohio St.3d 187, 519 N.E.2d 638; Kaska, supra.

Reynolds, however, also agreed that claimant would benefit from a work-hardening program and a weight-loss program.  This recommendation, the appellate court found, suggested a capacity for further improvement and did not, therefore, establish MMI.  In reaching this result, the court relied exclusively on the rationale employed in Matlack.

Matlack analyzed cases from this court in which the medical phraseology used in a physician's report anchored the MMI debate.  The opinion concluded that:

"* * * [T[here is a distinction in the case law between physical rehabilitation and occupational-type therapy related

to the condition's improvement, and vocational rehabilitation or job training related to claimant's vocational improvement. The former type of rehabilitation can signify continuing possibility of medical improvement while the latter cannot." Id. at 659, 598 N.E.2d at 128.

In this case, the appellate court found that because the proposed weight-loss treatment was not vocationally related, the continuing possibility of medical improvement could not be ruled out. While the appellate court's analysis is preliminarily sound, it warrants further discussion.

As stated earlier, one of the factors complicating the issue of weight-loss compensability is the fact that any overweight claimant will benefit from weight-loss. If mere medical improvement were the standard, as the appellate court held, an obese claimant could never be considered maximally improved and temporary total compensability, if other requirements were met, could continue indefinitely. This is not the purpose of temporary total disability payments.

States that have confronted the weight-loss/MMI issue have focused not on whether medical improvement will occur -- since improvement is a given -- but have concentrated instead on the type of improvement that is contemplated again, curative or palliative. For example, in Verdi's Italian Restaurant v. Campanella (Fla. App. 1982), 423 So.2d 582, 583, a Florida appellate court found that the proposed weight-loss program was:

"* * * palliative in nature, aimed at relieving the pain in her leg and lowering her blood pressure, and is therefore not inconsistent with the deputy's finding of maximum medical improvement."

On the other hand, Van Blokland, supra, held:

"The evidence is persuasive that claimant's condition will improve is she loses significant amounts of weight. The proposed weight loss treatment program is curative and not palliative. * * * It will not be possible to determine the extent of the disability until she has had the treatment." Id. at 698-699, 743 P.2d at 1138.

Thus, a recommended weight reduction program may or may not be consistent with the concept of MMI. In this case, review of the commission's permanency declaration is premature since the cause must be returned to the commission for further consideration of the weight-loss authorization question.

We thus reverse that portion of the appellate judgment that found additional allowance of "obesity" to be a prerequisite to authorization of a weight-loss program. The remainder of the judgment is affirmed.

Judgment reversed in part
and affirmed in part.