DECISION
{¶ 1} Relator, Pepsi Cola General Bottlers, Inc., has filed this original action in mandamus requesting this court to order respondent Industrial Commission of Ohio to vacate its order approving the request of Alan A. Romano for surgery and to enter a new order denying said request.
 {¶ 2} This court referred the matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that relator had failed to demonstrate that the commission had abused its discretion and that this court should deny the requested writ.
 {¶ 3} Relator filed an objection to the decision of the magistrate arguing that the magistrate erred in failing to address relator's claim that the hearing officer could not implicitly allow a condition. However, the magistrate found, and we agree, that the commission was within its discretion in concluding that the term "lumbar" in the claim allowance included the L3-L4 level in the absence of any specific exclusion, where the underlying medical reports upon which the commission relied make specific mention of the L3-L4 level as being included in those areas felt to contribute to the claimant's symptoms and hence to the aggravations alleged. For the reasons stated in the decision of the magistrate, the objection is overruled.
 {¶ 4} Following independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them, and we adopt her decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the decision of the magistrate, the requested writ is denied.
Objection overruled; writ denied.
WATSON and SADLER, JJ., concur.
 DECISION IN MANDAMUS {¶ 5} In this original action in mandamus, relator, Pepsi Cola General Bottlers, Inc., asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order approving the request of respondent Alan A. Romano for surgery and to issue a new order denying the request.
Findings of Fact:
 {¶ 6} 1. In December 1995, Alan A. Romano ("claimant") sustained an industrial injury, and his workers' compensation claim was allowed for low back strain.
 {¶ 7} 2. In February 1998, claimant filed a motion to allow his claim for the conditions of herniated L5 disc, aggravation of pre-existing lumbar canal stenosis, and aggravation of pre-existing facet hypertrophy.
 {¶ 8} 3. In support of the motion, claimant submitted the results of an MRI report that included the following findings: facet osteoarthropathy, greatest at the L5 level; moderate canal stenosis L4 into the L4-5 disc space level with mild canal stenosis L3-4 disc space level by the effects of facet osteoarthropathy, flavum hypertrophy, and short pedicles; moderate protrusion of the L5 disc with displacement of the S1 nerve root; and protrusion of the L4 disc with herniation into the L5 vertebral body.
 {¶ 9} 4. In support of the additional allowances, claimant also filed medical opinions from Bhupinder S. Sawhny, M.D. In June 1996, Dr. Sawhny noted that the MRI had shown, among other things, stenosis at the L3-4 and L4-5 levels and a herniated disc at L5. In August 1996, Dr. Sawhny again noted that claimant had "canal stenosis at 3-4-5." In a December 1998 report, Dr. Sawhny stated that the MRI "was diagnostic of lumbar canal stenosis secondary to hypertrophy of the facet joints at the L3-4 and L4-5 levels," although claimant also had evidence of congenital lumbar canal stenosis related to short pedicles of the lumbar vertebrae.
 {¶ 10} 5. In July 1999, the claim was additionally allowed for "aggravation of pre-existing lumbar canal stenosis" as well as aggravation of pre-existing facet hypertrophy and herniated L5 disc.
 {¶ 11} 6. In September 2000, another MRI was done.
 {¶ 12} 7. In July 2001, claimant filed a motion requesting payment of Dr. Sawhny's medical bills, which the self-insured employer had denied. In addition, claimant requested authorization for a lumbar laminectomy at L3-4.
 {¶ 13} 8. In December 2001, a district hearing officer granted authorization for a "decompressive lumbar laminectomy for lumbar canal stenosis at the L3-4 [level]."
 {¶ 14} 9. The employer appealed, arguing that lumbar canal stenosis at L3-4 was not allowed in the claim.
 {¶ 15} 10. In February 2002, the appeal was heard by a staff hearing officer ("SHO"), who noted at the outset that the claim was allowed for conditions including "aggravation of pre-existing lumbar canal stenosis." The SHO approved the surgery as follows:
 {¶ 16} "The employer objects to the District Hearing Officer's approval of claimant's request for authorization of an `L3-4 decompressive lumbar laminectomy' procedure. The employer asserts that, because the allowed conditions do not specifically mention the L3/4 levels, it is error to conclude that they are recognized in this claim. Additionally, even if deemed to be recognized herein, the employer asserts that the `aggravations' allowed in this claim have returned to their baseline or pre-injury conditions and that, therefore, the present request for surgery is necessitated only by the natural progression or status of these pre-existing conditions and not by the `aggravations' previously allowed.
 {¶ 17} "In answer to the first concern raised by the employer, the Staff Hearing Officer finds that the L3/L4 levels are implicitly included in the allowed conditions herein under the allowed `aggravation of pre-existing lumbar canal stenosis and pre-existing facet hypertrophy'. The evidence relied upon in amending the claim to additionally recognize these `aggravations' (e.g., the reports and notes of Dr. Sawhny, St. Vincent Charity Hospital and the 06/07/1996 MRI) makes specific mention of the L3/L4 levels as being included in those areas felt to contribute to claimant's symptoms and, hence, to the `aggravations' alleged. Furthermore, the Staff Hearing Officer finds that, under the rationale of State ex rel Bowman v. Industrial Commission (1992), 65 Ohio St.3d 317,603 North East 2d 1000 and caselaw interpreting the parameters of jurisdiction under R.C. 4123.52, there is no authority at this juncture to `sua sponte' modify the previously allowed conditions to render them more restrictive so as to exclude the L3/L4 levels.
 {¶ 18} "As to the request for the surgical procedure itself, the Staff Hearing Officer finds that such a procedure was contemplated as early as 06/25/1996 (see, Dr. Sawhny report of that date). Claimant's ongoing low back complaints demonstrate that his condition HAS not resolved and that he has not returned to his pre-injury condition. [T]he 10/11/2000 report of Dr. Martin is not persuasive in supporting the contention that claimant's current complaints and need for L3/L4 surgery are due solely to his pre-existing conditions and not to the 12/19/1995 injury and the conditions recognized in this claim. Dr. Martin fails to account for claimant's 03/28/2000 18% permanent partial disability award, which suggests that claimant has not had a resolution of his problems and a return to a baseline level. The 04/27/1999 report of Dr. Martin, which opined that the claim should not be additionally allowed for the `aggravations' noted above, was rejected and the claim amended accordingly (07/06/1999 Staff Hearing Officer order)."
 {¶ 19} 11. Further appeal was refused.
Conclusions of Law:
 {¶ 20} The employer contends that the commission abused its discretion in granting claimant's request for surgery to treat lumbar stenosis at L3-4.
 {¶ 21} Various judicial decisions have set forth the applicable standards for authorizing treatment for an industrial injury. See, e.g., State ex rel. Nutt v. Cincinnati (1994), 70 Ohio St.3d 594, 597; State ex rel. Miller v. Indus. Comm. (1994), 71 Ohio St.3d 229, 232; State ex rel. Noland v. Indus. Comm. (Aug. 27, 1987), Franklin App. No. 86AP-594. See, also, Ohio Adm. Code 4121-17-02, 4123-7-02, 4123-6-161, 4123-6-24, and 4123-6-25(A). In short, the claimant must establish that the requested treatment is reasonably necessary for treatment of an allowed condition.
 {¶ 22} Here, the employer argues that claimant was not entitled to treatment for lumbar stenosis at L3-4. The employer argues, first, that an allowance for "lumbar" stenosis does not included stenosis at L3-4. Second, the employer argues that the aggravation was temporary and that the current condition is solely the pre-existing stenosis, or the "baseline" stenosis that was not caused by the industrial injury.
 {¶ 23} The magistrate finds no merit in the first argument. The word "lumbar" refers to the lumbar region of the spine as opposed to the thoracic spine, cervical spine, etc. The "lumbar" spine obviously includes the L3-4 and L4-5 levels. Therefore, the term "lumbar canal stenosis" includes stenosis at any lumbar level unless specifically excluded. The commission was within its discretion to conclude that the term "lumbar" in the claim allowance included the L3-4 level in the absence of a specific limitation.
 {¶ 24} The second argument is theoretically sound. When a claimant has a pre-existing condition that is aggravated by an industrial injury, the aggravation can be a temporary condition that subsequently resolves completely, leaving only the pre-existing or "baseline" condition. In other cases, however, an aggravation can cause long-term or even permanent effects.
 {¶ 25} At the SHO hearing, the employer argued that the aggravation was merely temporary and had resolved. The employer argued that the extent of lumbar canal stenosis had returned to its baseline level with no permanent damage from the industrial injury. However, the SHO did not find the argument persuasive.
 {¶ 26} The SHO expressly rejected Dr. Martin's opinion that surgery was needed solely to treat the pre-existing conditions. The SHO noted that surgery had been viewed as potentially necessary soon after the industrial injury occurred, and noted that Dr. Martin had believed that the aggravations should not have been allowed in the first place. The SHO noted that claimant had been awarded permanent partial disability based on the additionally allowed conditions. The evidence was subject to interpretation, and the commission's interpretation was within its discretion. State ex rel. Pass v. C.S.T. Extraction Co. (1996),74 Ohio St.3d 373; State ex rel. Bell v. Indus. Comm. (1995),72 Ohio St.3d 575, 577; State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165; State ex rel. Burley v. Coil Packing, Inc. (1987),31 Ohio St.3d 18.
 {¶ 27} The magistrate concludes that the employer has not met its burden of proving an abuse of discretion by the commission and, therefore, recommends that the court deny the requested writ of mandamus.