DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, The Newark Group, Inc., commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio (1) to vacate its order authorizing arthroscopic surgery for diagnostic purposes, as well as post-surgery physical therapy twice a week for four weeks following surgery for respondent Rick R. Barnett ("claimant"), and (2) to deny the request in its entirety as not supported by some evidence in the commission's record.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision the magistrate determined the commission reviewed all the evidence in the record, and the evidence in the record supports its decision and order. Accordingly, the magistrate concluded the requested writ should be denied.
 {¶ 3} Relator has filed objections to the magistrate's decision:
Newark objects to the Magistrate's characterization of the January 21, 2004 C-9 request for arthroscopic surgery and post-surgery therapy and the January 21, 2004 report of Dr. Berasi as some evidence to support the Industrial Commission's decision authorizing surgery. Put simply, Dr. Berasi only discusses surgical intervention for non-allowed conditions. Additionally, the remaining reports relied upon by the Industrial Commission speak only in terms of treating Barnett's allowed conditions with conservative measures. Beyond that, the Magistrate failed to consider the entire record, which includes the opinions of Dr. Finneran and Dr. Middaugh that arthroscopic surgery is not reasonable or appropriate in relation to the allowed conditions.
 {¶ 4} Relator does not object to the magistrate's findings of fact, and we adopt those as our own. According to those facts, claimant sustained an injury at work on February 21, 2000, and his claim was allowed for "sprained left knee and leg; torn left lateral and medial meniscus; left chondromalacia patellae." (Magistrate's Decision, ¶ 15.) Claimant underwent arthroscopic knee surgery on April 21, 2000 and again on November 9, 2000, both under the care of Carl C. Berasi, D.O. Because claimant continued to experience pain, he was examined by a variety of doctors, including Dennis J. Taylor, M.D., David C. Randolph, M.D., Ira J. Ungar, M.S., M.D., James Kemper, D.O., and Susan Crapes, M.D.; on November 26, 2003, claimant again consulted with Dr. Berasi.
 {¶ 5} Subsequent to his consultation with claimant, Dr. Berasi requested an MRI, which relator approved. Following the January 14, 2004 MRI, Dr. Berasi filled out a C-9 dated January 21, 2004 seeking for claimant pre-surgery testing, arthroscopic surgery for the left knee, and physical therapy for four weeks following the surgery; Dr. Berasi's C-9 failed to list the ICD codes regarding the treating diagnosis. Dr. Berasi's January 21, 2004 report to Dr. Crapes, however, noted his assessment as "degenerative arthritis, left knee — ICD code 715.16" and "probable loose bodies — ICD code 717.9."
 {¶ 6} Because relator, a self-insured employer, initially denied the request, claimant filed a motion which was heard before a district hearing officer. The district hearing officer granted the request, and a staff hearing officer issued an order affirming the district hearing officer's order.
 {¶ 7} In essence, relator's objections assert the staff hearing officer's order is not supported by some evidence in the record. The staff hearing officer's order specifies reliance on the (1) C-9's dated January 21, 2004 and December 16, 2003, (2) the December 16, 2003 report of Dr. Crapes, (3) the January 21, 2004 report of Dr. Berasi, and (4) the July 8, 2003 office note of Dr. Kemper.
 {¶ 8} The December 16, 2003 C-9 of Dr. Crapes lists the appropriate ICD codes that correspond to the allowed conditions, but her request was not for pre-surgery testing, arthroscopic surgery of the left knee, and follow-up physical therapy; instead she sought medical management and visits for claimant. While Dr. Berasi's January 21, 2004 C-9 sought pre-surgery testing, arthroscopic surgery, and follow-up physical therapy for claimant, Dr. Berasi's C-9 fails to list any treating diagnosis or ICD codes. Thus, neither C-9 supports the staff hearing officer's order authorizing the requested testing, surgery, and physical therapy for claimant.
 {¶ 9} The staff hearing officer also relied on the December 16, 2003 report of Dr. Crapes. Her report discusses claimant's condition and sets a course of treatment involving refills of medications, a coupon for a consultation regarding bariatric surgery, and periodic visits at her office. While she mentioned the allowed conditions here, her report does not recommend the procedures authorized under the staff hearing officer's order.
 {¶ 10} The staff hearing officer also cited the January 21, 2004 report of Dr. Berasi as supporting authorization for the treatment claimant requested. Dr. Berasi's report, however, cites two ICD codes, one for degenerative arthritis of the left knee and the other for possible loose bodies, neither of which correspond to the allowed conditions arising from relator's work injury. Indeed, the commission notes that Dr. Berasi addresses conditions that "are not related to the allowed conditions." (Memorandum in Support of Magistrate's Decision, 3.)
 {¶ 11} The commission nonetheless contends the existence of contributing non-allowed conditions is not a legitimate reason for refusing to pay for the requested treatment. While contributing non-allowed conditions may not be a legitimate reason for refusing the treatment, Dr. Berasi's report lacks the necessary causal link between the allowed conditions and the requested treatment. Accordingly, his report is not some evidence on which the staff hearing officer could rely to grant the requested treatment. Although the staff hearing officer also relied on the July 2003 office notes of Dr. Kemper, those notes do not suggest that the problem the doctor considered in that visit requires the requested treatment.
 {¶ 12} In the final analysis, the evidence before the staff hearing officer did not support the order the staff hearing officer issued. Because none of the evidence cited in the staff hearing officer's order is some evidence supporting the order, we sustain relator's objections.
 {¶ 13} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts, and we adopt those as our own. For the reasons set forth in this decision, however, we reject the magistrate's conclusions of law and instead, consistent with this decision, issue a writ of mandamus ordering the Industrial Commission to vacate the May 3, 2004 order of its staff hearing officer granting the requested medical treatment, and to issue an order denying the request for a lack of supporting evidence in the commission's record.
Objections sustained; writ granted.
Klatt and Bowman, JJ., concur.
Bowman, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
 State of Ohio ex rel. :
 The Newark Group Inc., :
 Relator, :
 v. : No. 04AP-594
 Industrial Commission of Ohio : (REGULAR CALENDAR)
 and Rick R. Barnett, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on November 30, 2004 Schottenstein, Zox Dunn, Corey V. Crognale and Meghan M. Majernik,
for relator.
Jim Petro, Attorney General, and Paul H. Tonks, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 14} Relator, The Newark Group Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order authorizing arthroscopic surgery for diagnostic purposes, as well as post-surgery physical therapy twice a week for four weeks following surgery for respondent Rick R. Barnett ("claimant") and ordering the commission to deny the request in its entirety as not supported by some evidence in the commission's record.
Findings of Fact:
 {¶ 15} 1. Claimant sustained a work-related injury on February 21, 2000, and his claim has been allowed for "sprain left knee and leg; torn left lateral and medial meniscus; left chondromalacia patellae."
 {¶ 16} 2. Arthroscopic knee surgery was performed on April 21, 2000, to repair a degenerative medial meniscal tear and a degenerative radial tear of the lateral meniscus.
 {¶ 17} 3. Unfortunately, claimant's condition did not improve.
 {¶ 18} 4. On November 9, 2000, a second arthroscopic surgery was performed. At that time, claimant was diagnosed with chondromalacia of the left knee, torn lateral meniscus and chondromalacia of the femoral grove and patella.
 {¶ 19} 5. Following the second surgery, claimant continued to experience pain.
 {¶ 20} 6. On March 1, 2001, claimant was examined by Dennis J. Taylor, M.D., who noted that claimant continues to complain of unrelenting pain which is not only activity related, but also pain with rest. Upon examination, Dr. Taylor noted that there was "crepitation noted behind the patella," but that the knee was "otherwise grossly stable." Dr. Taylor noted that, while surgery was not indicated at this juncture, if claimant's condition progressed to arthritis, then a re-surfacing procedure may be appropriate. Dr. Taylor recommended anti-inflammatory medication or intra-articular steroid injections as well as supplements of glucosamine/chondroitin as well as further therapy.
 {¶ 21} 7. Claimant was evaluated by David C. Randolph, M.D., on March 26, 2001. Dr. Randolph opined that claimant's current complaints are a direct continuation of his original industrial injury; that claimant should be capable of work-related activities with the avoidance of standing or walking for more than a brief period of time; bending, twisting and stooping may be performed occasionally; that squatting, climbing stairs or ladders, or walking on uneven surfaces should be avoided; and that claimant be restricted to lifting no more than ten pounds. Dr. Randolph opined that these restrictions were permanent in nature. Dr. Randolph further opined that claimant had reached maximum medical improvement ("MMI") with respect to the condition of "sprain of lateral collateral ligament."
 {¶ 22} 8. Claimant was next examined by Ira J. Ungar, MS, M.D., who opined that, based upon the currently allowed conditions, there is objective physical evidence that claimant's present complaints are a direct continuation of the injuries suffered; however, the magnitude of the current complaints is in excess of what one would expect. He further opined that claimant had pre-existing degenerative cartilage disease at the time of his injury and that a substantial amount, if not the majority, of the findings during surgeries were likely to be pre-existing. Dr. Ungar opined that degenerative joint disease and chondromalacia both represent manifestations of cartilage degeneration of the knee. Dr. Ungar opined that claimant had reached MMI and that the only medical management appropriate at this time would be intra-articular steroid and lubricating agents along with anti-inflammatories, a moderate home exercise program as well as a patient-focused weight-loss program.
 {¶ 23} 9. Claimant treated with James Kemper, D.O., who noted in his July 22, 2003 office notes that claimant attended a fair two days ago and that, as a result, his knee became very swollen and painful and that it locked up on him.
 {¶ 24} 10. A follow-up visit with Susan Crapes, M.D., on December 16, 2003, revealed that claimant saw her for a workers' compensation visit in seeking refills on his medication. In her office notes, she noted that claimant has been taking Ibuprofen three times a day and using Vicodin twice a day. She noted that he has degenerative deformity of both knees, that he walks very stiffly with a wide-based gait as if in pain, and that he has decreased range of motion of the knees with dramatic creptiance. She gave him a coupon to consult for bariatric surgery.
 {¶ 25} 11. On the same date, Dr. Crapes completed a C-9 form for claimant for medical management and visits and listed the following ICD codes: "844.9 sprain of knee leg nos," "836.1 tear lat menisc knee-cur," "836.2 tear meniscus nec-curren," and "717.7 chondromalacia patellae."
 {¶ 26} 12. On November 26, 2003, claimant again consulted with Carl C. Berasi, D.O., the surgeon who had performed his surgeries. Dr. Berasi requested an MRI which was approved. The MRI was performed on January 14, 2004, and noted left knee degenerative joint disease with an ossified intra-articular body. Dr. Berasi noted that claimant was pursuing bariatric surgery and indicated he believed that claimant ultimately would require total knee arthroplasty. Dr. Berasi filled out a C-9 dated January 21, 2004, seeking pre-surgery testing, arthroscopic surgery of the left knee, and physical therapy twice a week for four weeks following the surgery. As with his request for the MRI which was approved by relator, Dr. Berasi neglected to list the ICD codes regarding the treating diagnosis.
 {¶ 27} 13. Relator, a self-insured employer, initially denied the request for treatment, and claimant filed a motion requesting that the matter be referred for hearing to the commission.
 {¶ 28} 14. Thereafter, claimant was examined by Mark T. Finneran, M.D., who indicated that he did not find objective evidence that claimant's present complaints were a direct continuation of his injury as he believed claimant had recovered. He opined that further treatment was neither appropriate nor effective considering claimant's age, his physical status, and the allowed conditions. Dr. Finneran recommended that claimant continue taking oral anti-inflammatory medications available over the counter.
 {¶ 29} 15. Claimant submitted a copy of Dr. Berasi's January 21, 2004 report to Dr. Crapes, wherein he noted his assessment as follows: "Degenerative arthritis, left knee — ICD Code 715.16," and "Probable loose bodies — ICD Code 717.9." Dr. Berasi noted that claimant's knee is doing quite poorly and that he would like to perform another arthroscopy and further indicated that he believed claimant would ultimately require a total knee replacement.
 {¶ 30} 16. Claimant's motion seeking authorization of treatment for diagnostic testing including an arthroscopic surgery and physical therapy for four weeks thereafter was heard before a district hearing officer ("DHO") on March 24, 2004, and resulted in an order granting the request as follows:
The District Hearing Officer approved the C-9 dated 12/16/2003 of Dr. Crapes and C-9 of Dr. Berasi dated 01/21/2004 for pre-surgical testing, scope of the left knee, physical therapy for 4 weeks, and post surgical office visits pursuant to Bureau of Workers' Compensation/Industrial Commission rules and regulations based on the report of Dr. Berasi dated 01/21/2004 and the injured worker's testimony.
The injured worker testified his right knee does also bother him as he favors his left knee which puts additional pressure on his right leg. Although total knee replacement and bariatric surgery are mentioned in the report of Dr. Berasi, such surgery is not being requested at this hearing. The District Hearing Officer also relied on the report of Dr. Ungar dated 09/26/2002, especially page 8 which indicates a Grade III deterioration of the cartilage.
 {¶ 31} 17. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on May 3, 2004, and resulted in an order affirming the prior DHO order as follows:
The Staff Hearing Officer authorizes the arthroscopic surgery for diagnostic purposes, as well as post surgery physical therapy at a frequency of 2 per week for 4 weeks and a post surgery office visit. A narrative report is to be submitted to the claim file upon completion of the surgery and the surgery report is to be submitted to the claim file. The Staff Hearing Officer finds the left knee symptoms of locking up and falling per 07/08/2003 office note is related to the allowed conditions. The Staff Hearing Officer also relies on the C-9's dated 01/21/2004 and 12/16/2003, the 12/16/2003 report of Dr. Crapes, the 01/21/2004 report of Dr. Berasi, and the 07/08/2003 office note of Dr. Kemper.
 {¶ 32} 18. Relator's appeal was refused by order of the commission mailed May 26, 2004.
 {¶ 33} 19. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 34} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 35} Relator advances several arguments in support of its assertion that the commission abused its discretion in granting claimant's motions because relator asserts that the record does not contain "some evidence" to support the commission's order. For the following reasons, this magistrate rejects relator's arguments.
 {¶ 36} In State ex rel. Miller v. Indus. Comm. (1994),71 Ohio St.3d 229, the Supreme Court of Ohio set out a three-prong test for the authorization of medical services. In order for treatment to be authorized, a claimant must demonstrate that the requested medical services are: (1) reasonably related to the allowed conditions; (2) reasonably necessary for treatment of the allowed conditions; and (3) reasonable in terms of cost.
 {¶ 37} In granting claimant's request to authorize surgery and physical therapy, the SHO relied upon the following evidence: (1) the July 2003 office note of Dr. Kemper, who noted that claimant had gone to a fair two days before and that the knee had become very painful and swollen and that it had locked up on him and caused him to fall; (2) the January 21, 2004 C-9 of Dr. Berasi which, as relator notes, did not list the allowed conditions under the treating diagnosis; (3) the December 16, 2003 C-9 of Dr. Crapes, who listed the allowed conditions, noted that claimant's current condition and disability were consistent with the accident at work, and requested medical manage-ment and visits; (4) the December 16, 2003 report of Dr. Crapes, wherein she noted that claimant is very overweight, has degenerative deformity of both knees, walks very stiffly with a widebased gait as if in pain, and has decreased range of motion with the knees with dramatic crepitance; and (5) the January 21, 2004 report of Dr. Berasi listing degenerative arthritis and probable loose bodies under the assessment portion and indicating his opinion that claimant will ultimately require total knee arthroplasty.
 {¶ 38} In challenging the evidence relied upon by the commission, relator's argument focuses on each individual piece of evidence in isolation from the other pieces of evidence. For instance, relator points out that the C-9 of Dr. Berasi fails to list the allowed conditions, and that, pursuant to this court's decision in State ex rel. Shontz v.Indus. Comm., Franklin App. No. 03AP-726, 2004-Ohio-2643, the failure of the doctor to do so renders the C-9 invalid. However, in Shontz, the magistrate had simply noted, in the findings of fact, that the claimant had submitted a C-9 request for surgery which failed to contain the diagnosis and that the commission had denied the request for surgery upon this basis. Ultimately, an SHO denied the claimant's request for surgery based upon reports of Drs. Lax and Ortega. In adopting the magistrate's decision as its own, the court agreed with the magistrate's conclusion that the commission had cited some evidence to support its denial of the C-9 and denied the request for a writ of mandamus. As such, this court's conclusion that a writ of mandamus should not issue was not based at all on the lack of the listing of allowed conditions on the C-9 submitted.
 {¶ 39} In the present case, Dr. Berasi's C-9 does not include the allowed conditions; however, inasmuch as Dr. Berasi had already performed two surgeries on claimant, was familiar with claimant's condition, and had properly listed his allowed conditions elsewhere, the magistrate finds that it was not an abuse of discretion for the commission to list it as a piece of evidence upon which the commission ultimately relied, inasmuch as Dr. Berasi was aware of the allowed conditions and further was aware that the claimant continued to have ongoing problems with the knee in spite of the fact that he had already had two surgeries performed and had sustained no intervening injuries. As such, this magistrate finds that this issue is better left to the discretion of the commission to determine the weight and credibility of that particular piece of evidence.
 {¶ 40} Furthermore, relator challenges the report of Dr. Berasi, wherein he listed degenerative arthritis and probable loose bodies in the assessment portion of the report. As indicated elsewhere in the record, degenerative arthritis and chondromalacia are two terms which can be used interchangeably to describe the same conditions. Claimant's claim had already been allowed for one degenerative condition, i.e., of the patella. As such, that fact alone does not render his report invalid. Furthermore, as stated previously, Dr. Berasi was well acquainted with claimant's condition and the commission could judge the weight and credibility of his report.
 {¶ 41} Relator also challenges Dr. Crapes' C-9 because she does not mention surgery; however, as stated previously, the record submitted indicates that claimant had ongoing problems with his knee ever since the date of injury. Claimant was treated by several different doctors over the course of several years. When you look at all the doctors' reports and records together as a whole, it is clear that something further had to be done to assess claimant's problems and to deal with them. The magistrate views Dr. Crapes' C-9 as another piece of the puzzle used by the commission to determine what the best course of action for the claimant would be. As such, the magistrate does not feel it was an abuse of discretion for the commission to rely upon this as one more reason to ultimately authorize the arthroscopic surgery for diagnostic purposes. Furthermore, Dr. Kemper's office note provides further evidence that claimant continued to have problems during what most people would consider everyday activities.
 {¶ 42} Relator challenges the commission's order in another respect: relator contends that the commission engaged in an isolated review and relied upon limited evidentiary items without taking into consideration the combined, cumulative effect of the evidence as a whole and citesState ex rel. Supreme Bumpers, Inc. v. Indus. Comm., 98 Ohio St.3d 134,2002-Ohio-7089. As stated within the last few paragraphs, nothing could be further from the truth. In the present case, the commission did look at all the evidence in the file and, when reviewing all the evidence cumulatively, giving particular emphasis to the history of claimant's claim and condition, the commission authorized the arthroscopic surgery for diagnostic purposes. As such, contrary to relator's assertion, the commission did review all the evidence in the record, the decision and order are supported by the record, and the magistrate finds that the court should deny relator's request for a writ of mandamus.
 {¶ 43} Based on the foregoing, it is this magistrate's decision that this court should find that relator has not demonstrated that the commission abused its discretion and should deny relator's request for a writ of mandamus.