DECISION
{¶ 1} United States Gypsum Company ("US Gypsum") has filed this action in mandamus seeking a writ to compel the Industrial Commission of Ohio ("commission") to end payment for chiropractic care for Robert L. Nason. *Page 2 
 {¶ 2} In accord with Loc. R. 12(M), the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated to pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision (attached as Appendix A) which contains detailed findings of fact and conclusions of law. The magistrate's decision includes a recommendation that we deny the requested relief.
 {¶ 3} US Gypsum has filed objections to the magistrate's decision. The commission has filed a memorandum in response. The case is now before the court for review.
 {¶ 4} Robert L. Nason was injured on January 25, 2007. His workers' compensation claim has been recognized for cervical, thoracic, lumbar and right shoulder sprain/strain. He was already seeing a chiropractor for neck and lower back problems, perhaps related to degenerative disc disease which was definitively diagnosed through an MRI in April 2007.
 {¶ 5} At the request of US Gypsum, Nason was seen by a physician who attributed Nason's physical problems to pre-existing conditions. Nason's treating chiropractor expressed an opposite view and warned of potential serious harm if the chiropractic treatment stopped.
 {¶ 6} US Gypsum filed a motion requesting that payment for Nason's medical condition be stopped and that temporary total disability ("TTD") compensation being received by Nason be ended. A district hearing officer denied relief. On appeal, a staff hearing officer terminated the TTD compensation based upon a finding of maximum medical improvement, but allowed the chiropractic care to continue. *Page 3 
 {¶ 7} After further appeal to the commission failed to get the chiropractic care terminated, US Gypsum filed this action in mandamus.
 {¶ 8} The magistrate's decision is carefully done and thoroughly addresses the pertinent issues. US Gypsum makes four specific objections:
 I. THE MAGISTRATE MISCONSTRUED THE THRUST OF RELATOR'S ARGUMENT.
 II. THE MAGISTRATE ERRONEOUSLY ATTRIBUTED THE DATE OF DR. WINNESTAFFER'S ORTHOPEDIC TESTS T0 JUNE 28, 2007, ALTHOUGH THE ACTUAL DATE OF THE TESTS WAS JANUARY 26, 2007.
 III. THE MAGISTRATE ERRED IN FINDING THAT DR. WINNESTAFFER OPINED, AT THE TIME OF HIS JUNE 28, 2007 REPORT, THAT THE ORTHOPEDIC TESTS VALIDATED THE ALLOWED CONDITIONS IN THE CLAIM.
 IV. THE MAGISTRATE ERRED IN FINDING THAT DR. WINNESTAFFER OPINED, AT THE TIME OF HIS JUNE 28, 2007 REPORT, THAT NASON NEEDED CONTINUED CHIROPRACTIC CARE AS A RESULT OF THE ALLOWED CONDITIONS.
 {¶ 9} The first objection is irrelevant. The magistrate carefully considered all of US Gypsum's arguments. Which argument was primary or "the thrust" does not matter. The first objection is overruled.
 {¶ 10} The magistrate does not attribute the orthopedic tests which validated the chiropractor's opinion to any specific date, so the January versus June date for the orthopedic tests is not significant. The orthopedic tests, did, in the chiropractor's opinion, support his opinion. The second and third objections are overruled. *Page 4 
 {¶ 11} The fourth objection does not accurately reflect the chiropractor's opinion, which was, to the effect, dire to things that would happen if the treatment stopped. The fourth objection is overruled.
 {¶ 12} All objections having been overruled, we adopt the findings of fact and conclusions of law contained in the magistrate's decision. As a result, we deny the request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
 PETREE and FRENCH, JJ., concur. *Page 5 APPENDIX A {¶ 13} Relator, United States Gypsum Company, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's motion to *Page 6 
terminate further chiropractic treatment for Robert L. Nason ("claimant"), and ordering the commission to find that any further chiropractic treatments are related to the preexisting conditions and not to the allowed conditions following the January 25, 2007 work-related injury.
Findings of Fact: {¶ 14} 1. Claimant sustained a work-related injury on January 25, 2007, and his claim was allowed for "cervical sprain/strain; thoracic sprain/strain; lumbar sprain/strain; right shoulder sprain/strain."
 {¶ 15} 2. Prior to his injury, claimant had been treating with chiropractor Gregg D. Winnestaffer, D.C., from May 6, 2006 through January 24, 2007. Claimant saw Dr. Winnestaffer 17 times prior to the date of injury. Based upon review of the treatment notes, claimant was receiving treatment for his neck and lower back.
 {¶ 16} 3. On the date of his injury, claimant stepped into a pothole and fell forward on the ground. At the time, claimant did not indicate any problems; however, he apparently had pain the following day. Because claimant already had a scheduled appointment with Dr. Winnestaffer, he saw him for his first visit following the date of injury on January 26, 2007. Claimant was seen by Dr. Winnestaffer every few days from January 26, 2007 through February 20, 2007, with complaints focusing on his neck and lower back. Beginning in March 2007, claimant appeared to indicate that his neck was feeling better and, as of June 2007, indicated that his lower back was feeling better.
 {¶ 17} 4. MRIs taken in April 2007 revealed degenerative disc disease at all three levels. *Page 7 
 {¶ 18} 5. Claimant began receiving temporary total disability ("TTD") compensation following the date of injury. Also, claimant's chiropractic visits from January 26, 2007 on were paid for under claimant's workers' compensation claim.
 {¶ 19} 6. Claimant was examined by Dr. John C. Radabaugh, Jr., on April 18, 2007. Dr. Radabaugh would issue a report dated April 20, 2007, and two addendums, one dated May 25, 2007 and the second dated July 6, 2007. The addendums were necessary because Dr. Radabaugh did not have claimant's records from Dr. Winnestaffer when he examined him in April 2007. Further, although Dr. Radabaugh was provided with certain other documents before his May 2007 addendum, Dr. Radabaugh did not have all claimant's medical evidence until he issued his July 6, 2007 addendum. Dr. Radabaugh had been asked to provide his opinion concerning the appropriateness of claimant's continued chiropractic treatment. In his July 6, 2007 addendum, Dr. Radabaugh ultimately concluded:
 Considering the current, indeed, informative documentation, within a reasonable degree of medical probability, Mr. Nason's present conditions involving the cervical, thoracic, and lumbar spine, is most likely proximately related to his pre-existing spinal condition, vs. the 1/25/07 incident. I arrived at this conclusion because:
 a) The diagnostic spinal MRI studies in April 2007, does establish, to a reasonable degree of medical probability/-certainty that Mr. Nason's cervical, thoracic, and lumbar spine conditions developed substantially prior to January 25, 2007.
 b) The employer's records contemporaneously document no physical symptoms immediately following the incident. In addition, these records also verify that at the close of Mr. Nason's 1/25/07 workday, and the workday following the incident, he had no symptoms. When questioned by the employer, Mr. Nason refused medical attention. *Page 8 
 c) Mr. Nason's [sic] apparently had a prearranged chiropractic appointment for 1/26/07, for health maintenance purposes.
 d) The chiropractic POR's record on 1/26/07 are in conflict with what Mr. Nason documented in the employer's records that same day.
 e) The chiropractic POR's record, on 1/26/07, indicate a general symptom pattern into the cervical, thoracic, and shoulders; however, absent any objective verification, certainly do not document a lumbar strain/sprain diagnosis.
(Emphasis sic.)
 {¶ 20} 7. In response to Dr. Radabaugh's report and addendums, Dr. Winnestaffer authored a report dated June 28, 2007, wherein he stated:
 Impairments are based on the AMA's "[G]uides to the Evaluation of Permanent Impairment" 5th addition [sic]. As you can see, the patient's 01/29/07 computerized range of motion shows 18% impairment. As of 05/30/2007, Mr. Nason's range of motion impairment had improved to 13%.
 Dr. Radabaugh states the patient, Mr. Nason, would not be precluded from working and is in need of no restrictions at this time. However, due to the patient's job duties, he is unable to lift or bend without moderate to severe low back pain. Mr. Nason is in need of chiropractic care in order to perform any activities of daily living.
 Since the work-related incident of January 25, 2007, Robert Nason has had continuous care. There has been no gap in patient's care. On April 20, 2007, patient reports that during the course of his examination with Dr. Radabaugh, due to extreme forward flexion with significant bending and twisting, Mr. Nason had a severe exacerbation.
 It is, therefore, my opinion that a denial of necessary chiropractic care, along with a slow reduction of supportive care, will jeopardize the health of this patient. In addition, it will potentially cause serious physical harm. A denial of this necessary care places my patient at risk for further injury. *Page 9 
 {¶ 21} 8. Based upon Dr. Radabaugh's report, relator filed a motion requesting that the commission terminate claimant's TTD compensation and further chiropractic treatment.
 {¶ 22} 9. The matter was heard before a district hearing officer ("DHO") on July 13, 2007, and relator's motions were denied.
 {¶ 23} 10. Relator filed an appeal from the DHO's order and the matter was heard before a staff hearing officer ("SHO") on September 4, 2007. Relator's motion was granted in part and denied in part. Specifically, the SHO granted relator's request to terminate claimant's TTD compensation based upon the reports of Dr. Radabaugh, especially the July 6, 2007 addendum, and his finding that claimant's allowed conditions had reached maximum medical improvement ("MMI"). The SHO stated:
 * * * Dr. Radabaugh is found persuasive that Injured Worker's present conditions involving the cervical, thoracic and lumbar spine are most likely proximately related to his pre-existing spinal condition rather than the 01/25/2007 incident. He also points out that the Injured Worker has been seeking and receiving health maintenance chiropractic services both previous to and subsequent to the industrial incident in this claim for multi-level musculoskeletal degenerative spinal conditions. The treatment notes from Dr. Winnestaffer, Injured Worker's physician, indicate that the Injured Worker was being treated up until one day before the allowed injury in this claim for problems with his cervical, thoracic and lumbar spine. Dr. Radabaugh reviewed the Injured Worker's treatment records both pre and post-injury and found that he had returned to a baseline status. Therefore, his finding of Maximum Medical Improvement as to the currently allowed conditions in this claim of sprain/strains is found persuasive.
 {¶ 24} 11. In spite of the fact that the SHO found that it was proper to terminate claimant's TTD compensation based upon a finding of MMI, the SHO determined that *Page 10 
relator's request to terminate further chiropractic treatment should be denied. The SHO relied upon the June 28, 2007 report of Dr. Winnestaffer and stated:
 The Hearing Officer finds that the requested treatment is reasonably related to the currently allowed conditions in this claim and is therefore found authorized and payable. The report of Dr. Winnestaffer, dated 06/28/2007, affirms that the Injured Worker is in need of chiropractic care in order to continue to perform his activities of daily living. Therefore, the Employer's request to terminate chiropractic treatment is found not well taken and DENIED.
(Emphasis sic.)
 {¶ 25} 12. Relator's further appeal was refused by order of the commission mailed November 8, 2007.
 {¶ 26} 13. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 27} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be *Page 11 
given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 28} The crux of relator's argument is that relator believes the commission made contradictory findings. Specifically, relator points to the fact that the commission relied upon the reports of Dr. Radabaugh to terminate claimant's TTD compensation and specifically identified that portion of Dr. Radabaugh's report wherein he opined that claimant's present conditions involving the cervical, thoracic and lumbar spine are most likely proximally related to his preexisting spinal condition rather than the January 25, 2007 incident. Relator equates this with a factual finding that claimant's current symptoms are related to his preexisting condition and not the January 2007 injury. As such, relator sees a contradiction when the commission determined that further chiropractic treatment should be authorized for the allowed conditions. Relator contends that the commission cannot rely upon the report of Dr. Radabaugh and find that claimant's current conditions are related to his preexisting conditions and the report of Dr. Winnestaffer who opined that claimant's condition had improved with treatment and that claimant needed further chiropractic treatment for the allowed conditions in this claim.
 {¶ 29} When the commission terminated claimant's TTD compensation, the commission relied upon Dr. Radabaugh's opinion that claimant's allowed conditions had reached MMI. The commission did note that Dr. Radabaugh opined that claimant's current conditions were most likely proximally related to his preexisting conditions. Relator contends that any further chiropractic care is, therefore, related to the preexisting conditions. *Page 12 
 {¶ 30} The only problem with relator's argument is that relator places too much weight and emphasis on the commission's reliance upon the report of Dr. Radabaugh to terminate claimant's TTD compensation. Relator equates the commission's reliance on that report as a legal conclusion that the evidence establishes that claimant's current symptoms are related to his preexisting condition and are not, at all, related to his post-injury conditions. Contrary to relator's assertion, the commission's reliance on this report is not the equivalent of a finding that claimant's current symptoms are actually unrelated to the allowed conditions following the work-related injury. Dr. Radabaugh only said that claimant's conditions were "most likely" related to his preexisting conditions. Dr. Radabaugh did not say his conditions were "definitely" related to his preexisting conditions. The commission relied on his report that claimant had reached MMI. This does not mean that the commission agreed with everything else Dr. Radabaugh opined.
 {¶ 31} As noted previously, the report of Dr. Winnestaffer indicates that claimant had positive orthopedic tests which validated the allowed conditions in the claim. Further, Dr. Winnestaffer noted that a comparison of claimant's range of motion from January to May 2007 shows an improvement from an 18 percent impairment to a 13 percent impairment. Further, Dr. Winnestaffer disagreed with Dr. Radabaugh's conclusion that relator was capable of returning to his former position without any restrictions at this time. Dr. Winnestaffer indicated that claimant would not be able to lift or bend without moderate to severe low back pain and that he needed further chiropractic care to perform activities of daily living. Ultimately, Dr. Winnestaffer opined that, at this time, claimant did need continued chiropractic care as a result of the allowed conditions following the work-related injury. *Page 13 
 {¶ 32} It is undisputed that, in spite of a finding that conditions have reached MM I, further treatment may be warranted. As this court noted in State ex rel. Brown v. Indus. Comm., Franklin App. No. 02AP-108, 2002-Ohio-4313, at ¶ 16-18:
 In many cases, treatment is needed to ease pain or maintain function but may or may not provide fundamental functional or physiological improvement. See, e.g., State ex rel. Copeland Corp. v. Indus. Comm. (1990), 53 Ohio St.3d 238, 239 * * *; State ex rel. Miller v. Indus. Comm. (1994), 71 Ohio St.3d 229, 232 * * *; State ex rel. Overlow v. Indus. Comm. (1998), Franklin App. No. 97AP-414, appeal dismissed, (1998), 83 Ohio St.3d 1405; State ex rel. Evans v. Indus. Comm. (1999), Franklin App. No. 97AP-958. * * *
 As demonstrated in the decisions cited above, the standard for authorizing treatment is not the same as the standard for awarding TTD compensation. Treatment may be authorized as "necessary" regardless of whether it is expected to result in fundamental improvement. In contrast, TTD may be awarded only where "fundamental functional or physiological change" is expected from the continuing treatment.
 In addition, * * * those with administrative authority to approve treatment requests (i.e., the bureau, employers, and managed care organizations) should be encouraged to approve needed treatment liberally, without a concern that a liberal grant of treatment will necessarily determine other issues and without a need to determine at that time whether the requested treatment is palliative, supportive, or curative in nature. The only questions in regard to authorizing treatment should be whether the treatment is necessary, necessitated by an allowed condition, and reasonable.
 {¶ 33} At oral argument, relator's counsel also argued that there was no reason for the SHO to mention that the requested treatment is reasonably related to the currently allowed conditions because further treatment was not at issue. The magistrate does not find the SHO's statement to be improper nor does it authorize any particular period of treatment. By arguing that any further treatments be terminated based on a finding that *Page 14 
they are not related to the allowed conditions, relator placed the issue of ongoing treatment before the SHO. The SHO rejected Dr. Radabaugh's opinions that claimant had already received excessive treatment and, inasmuch as Dr. Radabaugh only opined that claimant's "present conditions involving the cervical, thoracic, and lumbar spine, is mostlikely proximately related to his pre-existing spinal condition," the SHO found that relator did not meet its burden of proving that further treatment is not related to the allowed conditions and should be terminated. (Emphasis sic.)
 {¶ 34} In spite of the fact that the commission could have decided this case otherwise, the magistrate finds that there is some evidence in the record which supports the commission's determination to deny the motion to terminate further chiropractic care. Because the magistrate finds that the commission's decision to terminate TTD compensation and, at the same time, continue some level of chiropractic care is not contradictory, the magistrate finds that relator has not demonstrated that the commission abused its discretion and relator's request for a writ of mandamus should be denied. *Page 1